Sarah Barrows (Bar No. 253278)
barrowss@gtlaw.com
Stephen Ullmer (Bar No. 277537)
ullmers@gtlaw.com
**GREENBERG TRAURIG LLP**
4 Embarcadero Center, Suite 3000
San Francisco, CA 94111
Tel: (415) 655-1300
Fax: (415) 707-2010

James J. DeCarlo (*pro hac vice*)
decarloj@gtlaw.com
**GREENBERG TRAURIG LLP**
200 Park Avenue
Florham Park, NJ 07932
Tel:  (973) 360-7900
Fax:  (973) 301-8410

Kevin J. O'Shea (*pro hac vice*)
osheak@gtlaw.com
**GREENBERG TRAURIG LLP**
77 West Wacker Drive
Chicago, IL  60601
Tel:  (312) 456-8400
Fax:  (312) 456-8435

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| e.Digital Corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>Apple Inc.<br><br>                    Defendant. | Case No. 3:13-cv-00785 DMS-WVG<br><br>**APPLE'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(c)**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Hearing Date:     August 9, 2013<br>Time:                  1:30 p.m.<br>Assigned to:        Hon. Dana M. Sabraw<br>Courtroom:         13A<br><br>**ORAL ARGUMENT REQUESTED** |

## Table of Contents

I. INTRODUCTION ...................................................................................1

II. FACTUAL BACKGROUND.................................................................2

    A. The Asserted Patents And Claims................................................2

        1. The '774 Patent ...............................................................2
        2. The '737 Patent ...............................................................4
        3. The '170 Patent ...............................................................4

    B. The Accused Products ....................................................................5

III. LEGAL PRINCIPLES...........................................................................6

    A. Rule 12(c) Motions .........................................................................6
    B. Patent Infringement .......................................................................7

        1. Direct Infringement.........................................................7
        2. Indirect Infringement .....................................................9

IV. ARGUMENT........................................................................................10

    A. Plaintiff's Characterization Of Apple's Computers As Characteristic Of All Of The Accused Apple Products Violates The Purpose Of The Court's Order And The Local Patent Rules. .....10
    B. The Accused Apple Products Cannot Infringe The '774 Patent.........12

        1. Plaintiff's Documents Show That The Accused Apple Computers Do Not Have "Removable, Interchangeable" Flash Memory ................................................................13
        2. Plaintiff's Documents Also Show That The Flash Memory Provided In The Accused Apple Computers Is Not The "Sole Memory" .........................................................15

    C. The Accused Apple Products Cannot Infringe The '737 Patent.........17

        1. The Accused Apple Products Cannot Infringe Either Claim 1 Or Claim 4 Of The '737 Patent....................................17
        2. The Accused Apple Computers Also Cannot Infringe Claims 6, 9 And 13 Of The '737 Patent Because The Computers Do Not Initiate A Memory Integrity Test When The Internal Flash Memory Is Inserted ..........................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     D.     The Accused Apple Products Cannot Infringe The '170 Patent.........21

     E.     Plaintiff's Indirect Infringement Claims Violate The Court's Order And Should Be Struck ...............................................................22

V.     CONCLUSION..............................................................................................24

APPLE'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(C)

## Table of Authorities

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.,*
   692 F.3d 1301 (Fed. Cir. 2012) ......................................................................... 9

*Balistreri v. Pacifica Police Dep't,*
   901 F.2d 696 (9th Cir. 1990) ............................................................................. 7

*Constant v. Advanced Micro-Devices, Inc.,*
   848 F.2d 1560 (Fed. Cir. 1988) .................................................................. 8, 14

*DSU Med. Corp. v. JMS Co.,*
   471 F.3d 1293 (Fed. Cir. 2006) .................................................................. 9, 23

*Dworkin v. Hustler Magazine, Inc.,*
   867 F.2d 1188 (9th Cir. 1989) ........................................................................... 7

*Dynacore Holdings Corp. v. U.S. Philips Corp.,*
   363 F.3d 1263 (Fed. Cir. 2004) .................................................................. 9, 24

*Elkay Mfg. Co. v. Ebco Mfg. Co.,*
   192 F.3d 973 (Fed. Cir. 1999) ........................................................................... 8

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
   535 U.S. 722 (2002) ........................................................................................... 8

*Fleming v. Pickard,*
   581 F.3d 922 (9th Cir. 2009) ............................................................................. 7

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.,*
   389 F.3d 1370 (Fed. Cir. 2004) .................................................................. 8, 14

*Freedman Seating Co. v. American Seating Co.,*
   420 F.3d 1350 (Fed. Cir. 2005) .................................................................... 8, 9

*Global-Tech Appliances, Inc. v. SEB S.A.,*
   ---U.S.---, 131 S.Ct. 2060 (2011) ............................................................... 9, 23

*i4i Ltd. P'ship v. Microsoft Corp.,*
   598 F.3d 831 (Fed. Cir. 2010) ................................................................... 10, 24

*Merck & Co., Inc. v. Hi-Tech Pharmacal Co., Inc.,*
   482 F.3d 1317 (Fed. Cir. 2007) ......................................................................... 7

*Moore v. Donahoe,*
   No. C 11-05517 LB ............................................................................................ 6

*Pharmastem Therapeutics, Inc. v. ViaCell, Inc.,*
   491 F.3d 1342 (Fed. Cir. 2007) .................................................................. 8, 14

*Ultra-Tex Surfaces, Inc. v. Hill Brothers Chem. Co.,*
   204 F.3d 1360 (Fed. Cir. 2000) ......................................................................... 7

*United States v. Ritchie,*
   342 F.3d 903 (9th Cir. 2003) ............................................................................. 7

APPLE'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO
RULE 12(C)

*Venetec Int'l, Inc. v. Medical Device Group, Inc.*,
   No. 06CV83 IEG (WMc), 2007 WL 2238475 (S.D. Cal. Aug. 3, 2007).....................14
*Vita-Mix Corp. v. Basic Holding, Inc.*,
   581 F.3d 1317 (Fed. Cir. 2009) ...........................................................................10, 24
*Wahpeton Canvas Co. v. Frontier, Inc.*,
   870 F.2d 1546 (Fed. Cir. 1989) ..................................................................................7
*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997).......................................................................................................8

## Federal Statutes

35 U.S.C. § 271(b) ...............................................................................................................8
35 U.S.C. § 271(c) ........................................................................................................8, 9, 23

## Federal Rules

Fed. R. Civ. P. 12(c)...........................................................................................................6

APPLE'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(C)

# I.   INTRODUCTION

Plaintiff's Preliminary Infringement Contentions ("PICs") make clear that Plaintiff does not have—and ***never*** had—a plausible basis for alleging that Apple infringes any of the patents-in-suit.  The Court invited the Defendant to file a Motion for Judgment on the Pleadings in just this situation.  (Dkt. No. 21, Order, at ¶ 5.)  Because Apple's products do not directly infringe any of the asserted claims, as a matter of law there can be no indirect infringement.  Moreover, Plaintiff has not alleged—and indeed it cannot allege—that there are "no substantial non-infringing uses" for the accused products, as required to prove Plaintiff's contributory infringement claim.  In view of Plaintiff's inability to make out any plausible case for infringement, the Court should enter judgment in Apple's favor.

Plaintiff's PICs stretch and contort the asserted claims well beyond the broadest reasonable claim construction in an effort to keep Apple in this case.  For example, Plaintiff characterizes laptop computers as "handheld" recording devices, and equates software interfaces with physical structures disclosed in the patents-in-suit to argue that Apple's accused products meet means-plus-function limitations in the asserted claims.  Plaintiff's distorting of the asserted claims only serves to confirm that Plaintiff does not have a plausible basis for alleging that Apple infringes any of the patents-in-suit.

Moreover, Plaintiff has violated the Court's Order After Case Management Conference.  (Dkt. No. 21.)  The Court directed Plaintiff, if it intended to assert indirect infringement, to "provide as part of the initial infringement contentions an example of how the Defendant indirectly infringes, including the identity of the direct infringer and factual basis for the Defendant's intent."  (*Id.* at 4 (¶ 7).)  Plaintiff makes only the most cursory effort at complying with the Court's Order, and makes no effort whatsoever to identify any alleged direct infringer.  Furthermore, Plaintiff's entire "factual basis for [Apple's] intent" with respect to indirect infringement is to merely state, without alleging any facts, that Apple intended for some unidentified end user to infringe the asserted

claims.  That is far short of what the Court required, and it underscores Plaintiff's inability to put forth a plausible claim against Apple.

Plaintiff has to stretch its patent claims well beyond any reasonable scope to make the infringement claims set forth in its PICs.  However, each of the accused Apple products is clearly missing at least one limitation, and oftentimes multiple limitations, of the asserted claims, even giving the claims their broadest reasonable claim construction.[1] Plaintiff has no plausible basis for its infringement claims—direct, indirect, literal or pursuant to the doctrine of equivalents—and the Court should dismiss Plaintiff's infringement claims against Apple.

## II.   FACTUAL BACKGROUND

### A.   The Asserted Patents And Claims

Plaintiff asserts multiple claims from three of the patents-in-suit against various categories of Apple products.

#### 1.   The '774 Patent

U.S. Patent No. 5,491,774 ("the '774 patent") is directed to a handheld device for recording and playing back voice messages and dictation.  (Ex. 1, '774 patent, Abstract.[2]) Plaintiff claims that two Apple computers—MacBook Pro and MacBook Air—infringe various claims of the '774 patent.  (Ex. 2, Plaintiff's Disclosure of Asserted Claims and Preliminary Infringement Contentions ("PICs"), at 3.[3])

---

[1] Apple focuses here on the most obvious gaps in Plaintiff's infringement contentions. However, Apple has additional, significant non-infringement arguments, some of which are based on claim constructions and some of which may require expert explanation. Therefore, Apple reserves its right to assert specific constructions for the asserted claims, as well as to assert additional non-infringement arguments, at the appropriate time if necessary.

[2] All exhibits are submitted with the Declaration of Kevin J. O'Shea, which is being filed herewith.

[3] Plaintiff's claim charts for the three asserted patents are Exhibits 8-10.

In the prior Colorado litigation involving the '774 patent, Plaintiff explained to the court in connection with the claim construction briefing that:

> [T]he '774 Patent is the first of a series of patents issued to e.Digital and its predecessors-in-interest aimed at **handheld** audio recording and playback devices that use **removable flash memory** to store recorded audio. A novel feature of the inventions [sic] of the '774 Patent was the use of flash memory as the **sole storage media** for audio recorded by the handheld device.

(Ex. 3, Plaintiff's Opening Claim Construction Brief, Case No. 09-cv-02578-MSK-MJW (Dist. Col.) ("Colorado Litigation"), Dkt. No. 296, at 2 (emphases added).) Thus, according to Plaintiff, "although flash memory was generally known as a storage media [at the time the '774 patent was filed], flash memory was not considered to be an appropriate storage media **for use in a handheld audio recording and playback device.**" (*Id.* at 6.) Plaintiff's description of the limited nature of the claimed handheld recording device accords with the '774 patent's disclosure, which explains that prior art record/playback devices that used cassette tapes were well known, (Ex. 1, '774 patent, 1:18-25), and that it was "**well known to store virtually all forms of data in either digital or analog format within a computer [even including] voice information.**" (*Id.*, 2:4-6 (emphasis added).)

Thus, as the Colorado court found, after hearing testimony from the inventor at the *Markman* hearing, the device claimed in the '774 patent differs from prior dictation devices insofar as it records data to **removable** flash memory chips, rather than cassettes, hard drives, or other devices. (Ex. 4, Claim Construction Order entered in the Colorado Litigation, at 2.) This distinction allows the claimed handheld device to provide savings in, *inter alia*, power consumption, size, and weight compared to conventional dictation devices. (*Id.*)

### 2.     The '737 Patent

U.S. Patent No. 5,742,737 ("the '737 patent") is related to the '774 patent and, like the '774 patent, the '737 patent is one of the "series of patents issued to e.Digital and its predecessors-in-interest aimed at **handheld** audio recording and playback devices that use **removable flash memory** to store recorded audio."  (Ex. 5, '737 patent; Ex. 3, at 2 (emphases added).)   Plaintiff claims that the same two Apple computers, as well as various versions of Apple's iPod, iPhone, and iPad products infringe claims of the '737 patent.  (Ex. 2, PICs, at 3.)

Like the '774 patent, the '737 patent is directed to handheld recording devices that use flash memory as the sole storage medium.  The '737 patent describes and claims a device for enabling recording of a new message after the end of the last message recorded on flash memory used with a "solid state digital hand held recording device," (*Id.* at claim 1), as well as a method for verifying the integrity of flash memory used with a handheld recording device, in which a memory integrity test is activated by "manually inserting" the flash memory chip into the recorder.  (*Id.* at claim 13.[4])

### 3.     The '170 Patent

While U.S. Patent No. 5,842,170 ("the '170 patent") does not show any relationship to the '774 patent on its front page, the '170 patent claims priority to the '774 patent through a continuation-in-part application.  Moreover, Plaintiff filed a terminal disclaimer to the '774 patent during prosecution of the application that issued as the '170 patent, thereby acknowledging the relationship between the inventions claimed in the two patents. (Ex. 6, '170 patent; Ex. 7, terminal disclaimer.)

Like the '774 patent and the '737 patent, the '170 patent is one of Plaintiff's "series of patents aimed at **handheld** audio recording devices that use **removable flash memory** to store recorded audio." (Ex. 6, '170 patent; Ex. 3, at 2 (emphasis added).)  The '170 patent discloses and claims "a handheld recorder having flash memory for storing messages in

---

[4] Plaintiff replaced original claim 5 of the '737 patent with claim 13 during reexamination.

message segments" wherein memory address pointers are used to link segments of various messages to one another, and stored messages can be edited. (Ex. 6, '170 patent, at claim 1.) The '170 patent also claims a "method for editing messages" in which the memory address pointers are altered. (*Id.* at claim 7.) Plaintiff claims that Apple's MacBook Pro and MacBook Air computers, as well as its iPhone, iPad, and iPod products infringe certain claims of the '170 patent. (Ex. 2, PICs, at 2.)

### B.    The Accused Products

As noted above, Plaintiff accuses two of Apple's computers, as well as its iPod, iPhone and iPad products of accusing certain claims in each of the asserted patents. The following chart summarizes Plaintiff's infringement claims:

| Accused Apple Products | | Asserted Claims |
|---|---|---|
| MacBook Pro; MacBook Air |  | '774 patent (claims 2, 10, 15, 23, 33); '737 patent (claims 1, 4, 6, 9, 13); and '170 patent (claims 1-4, 7) |
| iPad & iPad Mini |  | '737 patent (claim 4) '170 patent (claims 1, 7) |

| Accused Apple Products | | Asserted Claims |
|---|---|---|
| iPod Nano (2nd-7th generations) |  | '737 patent (claims 1, 4) |
| iPod Classic (5th and 6th generations) |  | '737 patent (claims 1, 4) |
| iPod Touch (2nd-5th generations) |  | '737 patent (claim 4) '170 patent (claims 1, 7) |
| iPhone, 3G, 3GS, 4, 4S, 5 |  | '737 patent (claim 4) '170 patent (claims 1, 7) |

## III.   LEGAL PRINCIPLES

### A.   Rule 12(c) Motions

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "'[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog,' because the motions are 'functionally identical.'" *Moore v. Donahoe*, No. C 11-05517 LB, 2013 WL

322561, *9 (N.D. Cal. Jan. 28, 2013) (*quoting Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).[5]  "A Rule 12(c) motion may thus be predicated on either:  (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a cognizable legal claim."  *Id.* (*quoting Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  Thus, [w]hen considering a motion to dismiss under Rule 12(c), the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party."  *Id.* (*quoting Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)).

"Although a court generally is confined to the pleadings on a Rule 12(c) motion, '[a] court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.'"  *Id.* (*quoting United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).  Accordingly, the Court invited the Defendants to file a Rule 12(c) motion after receiving Plaintiff's PICs where, as is the situation here, those "contentions fail to demonstrate a plausible claim of infringement, direct or indirect."  (Dkt. No. 21, Order, at ¶ 5.)

## B.   Patent Infringement

### 1.   Direct Infringement

The patentee bears the burden of proving infringement by a preponderance of the evidence.  *Ultra-Tex Surfaces, Inc. v. Hill Brothers Chem. Co.*, 204 F.3d 1360, 1364 (Fed. Cir. 2000) (stating that patentee bears the burden of proving infringement and is responsible for any "shortcoming" in the evidence regarding the components of the accused process).  "Dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed."  *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989).  In determining the scope of asserted

---

[5] The Federal Circuit applies regional Circuit law with respect to Rule 12(c) motions.  *See Merck & Co., Inc. v. Hi-Tech Pharmacal Co., Inc.*, 482 F.3d 1317, 1320 (Fed. Cir. 2007).

claims, care must be taken to avoid such an expansive scope that prior art identified in the specification comes within the claim scope. *Pharmastem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1362 (Fed. Cir. 2007) ("A statement in a patent that something is in the prior art is binding on the applicant and patentee…." ) (*quoting Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1570 (Fed. Cir. 1988)).

If the patentee is unable to prove literal infringement it may attempt to prove infringement under the doctrine of equivalents. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 39-41 (1997). The doctrine of equivalents "allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002). An element of an accused product is, as a matter of law, ***not*** equivalent to a claim limitation if such a finding would vitiate the claim limitation. *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1359 (Fed. Cir. 2005). In addressing whether a finding of equivalence would vitiate a claim limitation, courts must consider the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless. *Id.* Thus, statements in a patent specification that disclaim certain claim scope may limit the available scope of equivalents. *See Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1376 (Fed. Cir. 2004).

An infringement finding requires that every limitation in the asserted claim be found in the accused device, whether literally or pursuant to the doctrine of equivalents. *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999). If even one limitation is missing or not met as claimed, there is no literal infringement. *Id.* This requirement is typically referred to as the "all limitations" rule. *See, e.g., Freedman Seating*, 420 F.3d at 1358. The "all limitations" rule requires that infringement be

assessed on a limitation-by-limitation basis, as opposed to assessing it from the perspective of the invention as a whole.  *Id.*

### 2.    Indirect Infringement

A party that does not directly infringe a patent claim may be liable for indirect infringement under either 35 U.S.C. § 271(b) (inducement to infringe) or 35 U.S.C. § 271(c) (contributory infringement).  Liability for induced infringement requires (1) proof of direct infringement by a third party, and (2) proof that the accused inducer knew of the patent and induced others to actually infringe the patent.  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308 (Fed. Cir. 2012) ("An important limitation on the scope of induced infringement is that inducement gives rise to liability only if the inducement leads to actual infringement.").  Thus, "[i]nducement requires evidence of culpable conduct, directed to encouraging another's inducement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc*).  The Supreme Court recently confirmed that the accused inducer must ***know*** that the third party conduct it induced constituted infringement.  *Global-Tech Appliances, Inc. v. SEB S.A.*, ---U.S.---, 131 S.Ct. 2060, 2069 (2011).  Facts supporting only a finding of recklessness or negligence by the accused inducer are not sufficient to meet this high standard for inducement of infringement.  *Id.* at 2070-71.  Moreover, the Supreme Court rejected any standard that permitted "a finding of knowledge when there is merely a 'known risk' that the induced acts are infringing."  *Id.* at 2071.

To prove contributory infringement, similar to induced infringement, the patentee must first show that a third party has directly infringed the claim.  *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004).  The patentee must also show that the accused products are "especially made or especially adapted for use in an infringement of such patent, and ***not*** a staple article or commodity of commerce ***suitable for substantial non-infringing use***...."  35 U.S.C. § 271(c) (emphasis added).  "[N]on-

infringing uses are substantial when they are ***not*** unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009). Thus, in assessing whether a use is substantial, issues such as "the use's frequency [and] practicality, the invention's intended purpose, and the intended market" may be taken into consideration. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010).

Consistent with the requirements for identifiable third party infringement, and knowledge on the part of the defendant, the Court ordered Plaintiff, if it was going to assert indirect infringement, to "provide as part of the initial infringement contentions an example of how the Defendant indirectly infringes, including the identity of the direct infringer and factual basis for the Defendant's intent." (Dkt. No. 21, Order After Case Management Conference, at 4 (¶ 7).)

## IV.   ARGUMENT

### A.   Plaintiff's Characterization Of Apple's Computers As Characteristic Of All Of The Accused Apple Products Violates The Purpose Of The Court's Order And The Local Patent Rules.

Plaintiff's claim charts for the '737 and '170 patents disclose only a single accused Apple computer, which Plaintiff claims is representative of all other Apple products that Plaintiff accuses of infringing the asserted claims of those patents, including multiple generations of iPods, iPhones and iPads. (Ex. 2, PICs, at 4 ("e.Digital has chosen one representative product for the purposes of said [claim] charts."); Ex. 9, '737 patent claim charts; Ex. 10, '170 patent claim charts.[6]) While this may be literally consistent with the Court's Case Management Order requiring a representative product, Plaintiff ignores the spirit of the Court's Order, which was intended to balance the parties' needs. Plaintiff served PICs for one "representative product" because providing PICs for all accused products would presumably have been redundant. Thus, Plaintiff was not required to

---

[6] As noted above, Plaintiff only asserts the '774 patent claims against products in a single product line, namely Apple computers.

APPLE'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(C)

spend extra resources preparing repetitive PICs, and the Defendants received the information that they needed.  But Plaintiff did not tell the Court that it intended to assert multiple patents against multiple product families, none of which operate in the same manner as one another for purposes of the asserted claims.

Moreover, Plaintiff has ignored that the Court allowed Plaintiff to "provide infringement contentions for additional accused products and/or processes following the issuance of the claim construction order as provided in Patent L.R. 3.6(a)." (*Cf.* Dkt. No. 21, ¶¶ 7 and 8.)  Therefore, rather than hide its infringement bases regarding the majority of accused Apple products, Plaintiff could have simply held those product lines until after the claim construction order.

Plaintiff's reliance on a single accused computer, rather than one product from each family of accused products, undermines the purpose of the Court's Order and the Preliminary Infringement Contentions by hiding from Apple Plaintiff's bases, if any, for claiming that the other accused products—including iPods, iPads and iPhones—infringe any of the asserted claims.  None of these other products operate in the same manner as the accused computers, or each other, for purposes of the asserted claims.  Therefore, consistent with the purpose of the Court's Order and the Local Patent Rules, Plaintiff should have asserted infringement by only a single category of products (*e.g.*, computers) at this initial stage, or sought leave from the Court to identify multiple product lines in its PICs.  Instead, Plaintiff has left Apple in the dark as to the bases for Plaintiff's infringement contentions regarding the majority of accused Apple products.  Notably, Plaintiff's failure to provide complete initial disclosures also hinders Apple's ability to prepare its Preliminary Invalidity Contentions.

Plaintiff has had more than enough time to prepare infringement contentions regarding ***all*** of the accused Apple products.  Indeed, Plaintiff presumably has a basis for alleging infringement of each of the asserted claims by each of the accused Apple products.  But it has made no effort to provide that information, even with respect to

families of accused products, if not individual products.  At the least, the Court should order Plaintiff to withdraw its initial infringement allegations relating to Apple products other than the MacBook Pro and MacBook Air computers that are described in Plaintiff's claim charts.

### B.   The Accused Apple Products Cannot Infringe The '774 Patent

As noted above, Plaintiff claims that two Apple computers—MacBook Pro and MacBook Air—infringe independent claim 33 and dependent claims 2, 10, 15, and 23 of the '774 patent.  (Ex. 2, PICs, at 3; Ex. 8, '774 patent claim charts.)  Claims 2, 10, 15, and 23 depend from claim 33.[7]  Accordingly, if even one limitation of claim 33 is missing from the accused computers, those computers cannot infringe any of the asserted '774 patent claims.

Claim 33 claims "[a] record/playback device for use with a ***removable***, ***interchangeable***, flash memory recording medium…" and includes "a flash memory module which operates as ***sole memory*** of the received processed sound electrical signals…."  (Ex. 1, '774 patent, claim 33 (emphases added).[8])  In its PICs, Plaintiff stretches the concept of "removable" well beyond its breaking point, claiming that an internal component of a laptop computer, which users are not able to access without taking apart the computer, is "removable" in the same sense that the claimed flash memory module is "removable."  Moreover, Plaintiff's allegation with respect to the "sole memory" limitation ignores the very reference that it relies upon.

---

[7] Plaintiff replaced original claim 1 with claim 33 during reexamination of the '774 patent.
[8] Plaintiff asserts in its PICs that the preamble of claim 33 is a limitation and, therefore, must be found in the accused prodcts.  (Ex. 8, '774 patent claim charts, at 2.)

### 1. Plaintiff's Documents Show That The Accused Apple Computers Do Not Have "Removable, Interchangeable" Flash Memory

The '774 patent explains in detail that the flash memory module is a device that can be inserted into and removed from the claimed device **at will**, and also inserted into a compatible device to replay the saved message on a separate device:

> The present invention … offers the advantages of a removable element smaller in size than a cassette tape, but which has no moving parts.  This removable component comprises a flash memory chip or module which has the capacity to store digital information without need for ongoing power support…. This information can be immediately recovered by inserting the module into any compatible recorder for immediate playback.  It therefore functions in a manner comparable to a conventional handheld recorder, but without the deficiencies noted above for mechanical drive systems.
>
> *                *                *
>
> When inserted within the socket 30, pins of the module 29 seat within pin receptacles of the interconnect means 28.  ***In this sense, the small memory module is functionally similar to a cassette, in that it is inserted and removed at will.***  Furthermore, it can be readily inserted in[to] other compatible machines for interchangeable use.

(Ex. 1, '774 patent, at col. 3, lns. 50-64; col. 4, lns. 61-67 (emphasis added); *see also* Figure 3 (showing the removable flash memory module 29).)

The '774 patent goes so far as to identify the specific flash memory module that is claimed, and distinguishes the invention from devices that store data as part of a computer memory (*i.e.*, computers):

> The flash memory module **is** a digital memory storage device manufactured by Intel Corporation of Santa Clara, California (see U.S. Patent No. 5,267,218)…. ***Prior applications have been substantially limited to storage of data as part of a computer memory.***  Their use with a handheld dictation device has not been noted, perhaps because of the traditional expectation for need of a moving recording media.

APPLE'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(C)

(*Id.* at col. 4, lns. 19-27, 61-67 (emphases added); Ex. 11, U.S. Patent No. 5,267,218); *Pharmastem*, 491 F.3d at 1362 ("A statement in a patent that something is in the prior art is binding on the applicant and patentee….") (*quoting Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1570 (Fed. Cir. 1988)); *Venetec Int'l, Inc. v. Medical Device Group, Inc.*, No. 06CV83 IEG (WMc), 2007 WL 2238475, *6 (S.D. Cal. Aug. 3, 2007) ("A patent applicant may limit the scope of any equivalents of the invention by statements in the specification that disclaim coverage of subject matter.") (*citing Frank's Casing*, 389 F.3d at 1376).

Plaintiff alleges that the internal flash memory in Apple's accused computers meets the "removable, interchangeable flash memory recording medium" limitation. (Ex. 8, '774 patent claim charts, at 2, 8.) However, Plaintiff's PICs show that the flash memory provided in Apple's computers resides ***inside the computer***—*i.e.*, it is not accessible to users, and cannot be "inserted and removed at will," as described in the '774 patent:



Reference 3: page 8



Reference 11: page 5

(*Id.* at 3, 8.) Plaintiff relies on a document detailing a third party "tear down" of an Apple MacBook Air computer to support its contention that the internal flash drive is "removable" and "interchangeable" by users. (*Id.* at 8, 17 ("Reference 11: MacBook Air 13" Mid 2012 Teardown").)

Plaintiff provided a different version of the "tear down" document than is referenced in its PICs. (Ex. 12, Apple0978-987, "MacBook Air 13" Mid 2013 Teardown

– iFixit.[9])  Nonetheless, this document confirms that the accused computers must be taken apart to access the internal flash drive.  (*Id.* at Apple0981.)  Moreover, the third party that performed the disclosed teardown states on the very same page, next to the picture that Plaintiff copied into its PICs, that "the [flash] drive is smaller ***and not compatible with previous MacBook Air models….***"  (*Id.*)  Thus, the internal flash drive in Apple's accused computers is not only (i) not removable in the way that the claimed flash drive is removable, but (ii) it also is not interchangeable, even with other models of the same product, much less with any other electronic devices.  Plaintiff does not claim otherwise, although it did not copy the non-compatibility note into its claim charts.  (Ex. 8, '774 patent claim charts, at 2, 8.)

The actual document that Plaintiff cited in its PICs—"MacBook Air 13″ Mid 2012 Teardown"—also shows that the internal flash drive in Apple's accused computers is (i) not removable, and (ii) not interchangeable:  "the connector for this model's flash memory module is slightly different than last year!".  (Ex. 13, MacBook Air 13″ Mid 2012 Teardown, at 3; *cf.* Ex. 8, '774 patent claim charts, at 17 (identifying cited Reference 11 as this document)).

### 2. Plaintiff's Documents Also Show That The Flash Memory Provided In The Accused Apple Computers Is Not The "Sole Memory"

The documents that Plaintiff cites in support of its infringement contentions also show that the accused Apple computers do not meet the "sole memory" limitation in claim 33 of the '774 patent.  In particular, Plaintiff relies on partial specifications for Apple's MacBook Air computer to contend that the accused Apple computers meet the "sole memory" limitation.  (Ex. 8, '774 patent claim charts, at 8, 17; Ex. 14, Apple0973-977.) Those specifications do show that the MacBook Air computer includes an amount of flash memory as "storage."  (*Id.* at Apple0973.)  But Plaintiff ignores, and apparently hopes that

---

[9] Plaintiff bates-labeled the documents that it served with its PICs as "Apple____".

Apple and the Court will also ignore, that these specs show, just a few inches lower, that the MacBook Air has RAM.  (*Id.*)  Claim 33 of the '774 patent does not require that the flash memory be the "sole memory [to store] the received processed sound electrical signals."  Instead, the flash memory must be the "sole memory *of* the received processed sound electrical signals."  (Ex. 1, '774 patent, claim 33 (emphasis added).)  Simply put, Plaintiff cannot prove the presence of this limitation merely by stating that the accused Apple computers have flash memory.[10]

Plaintiff has no plausible basis for claiming that the accused Apple computers infringe the '774 patent.  Indeed, Plaintiff's own documents show that the accused Apple computers cannot infringe the asserted '774 patent claims.  The accused computers do not meet the very first limitation in claim 33 of the '774 patent, *i.e.*, "a removable, interchangeable, flash memory recording medium," and the flash memory provided with the computers is ***not*** the "sole memory" for either of the accused computers.  Therefore, the accused computers do not infringe claim 33 of the '774 patent.  Claim 33 is the only independent asserted claim, and the remaining claims all depend from it.  Therefore, the accused Apple computers also do not infringe any of the asserted dependent claims of the '774 patent.  Moreover, Plaintiff limited the scope of possible equivalents for the "removable, interchangeable flash memory" limitation when it specifically identified the claimed flash memory module as the module described in Intel's patent, and also distinguished the claimed device from devices that use computer memory, such as the accused Apple computers.  Finally, it is axiomatic that without direct infringement there can be no indirect infringement.  Therefore, the Court should enter judgment in Apple's favor with respect to Plaintiff's claims regarding the '774 patent.

---

[10] Further, if the Court grants Apple's Motion to Apply Collateral Estoppel, with respect to the Colorado Court's construction of the "sole memory" limitation, (Dkt. No. 31), the presence of RAM in the accused Apple computers will completely undermine any infringement claim with respect to the '774 patent.  Therefore, Apple incorporates the collateral estoppel briefing, including the Reply brief that will be filed on July 17, 2013.

## C.   The Accused Apple Products Cannot Infringe The '737 Patent

Plaintiff claims that various versions of Apple's iPod, iPad and iPhone products infringe independent claims 1 and 4 of the '737 patent.  (Ex. 2, PICs at 3.)  Plaintiff also claims that the same two Apple computers at issue for the '774 patent infringe claims 1, 4, 6, 9 and 13 of the '737 patent.[11]  (*Id.*)  Plaintiff's infringement claims regarding each of these products and claims are wrong for very simple reasons, regardless of the claim construction.

### 1.   The Accused Apple Products Cannot Infringe Either Claim 1 Or Claim 4 Of The '737 Patent

Claim 1 of the '737 patent claims a "solid state digital hand held recording device" that includes a "recording means…activated by [a] record switch assembly," and claim 4 claims a corresponding method.  (Ex. 5, '737 patent, claims 1 and 4.)  Both claims require the claimed device be a "hand held recording device."  (*Id.*[12])  The idea of a "hand held" device is described throughout the '737 patent as a device that can be held ***and operated*** with one hand.  For example, the '737 patent explains that "Fig. 1A illustrates the features of a hand held, solid state digital recording device 10."  (*Id.* at col. 3, lns. 55-56; Fig. 1A.[13])  This is the only embodiment described in the '737 patent, and nothing in the '737 patent file history suggests that "hand held" should be read to mean "laptop computer" or anything similar.

Furthermore, the accused Apple computers are not "recording devices" and Plaintiff does not allege anything different.   Indeed, Plaintiff omitted any allegation that the

---

[11] Claim 6 depends from claim 5, which Plaintiff cancelled during the reexamination. Thus, there is a question as to whether claim 6 is indefinite.  Apple assumes, solely for purposes of the present motion, that claim 6 is definite.
[12] Plaintiff asserts in its PICs that the preamble of claim 4, which includes the "hand held recording device" limitation, is part of the claim and must be found in an accused device. (Ex. 9, '737 patent claim charts, at 8.)
[13] Fig. 1A was included as part of a Certificate of Correction, which is part of Exhibit 5.

17

accused Apple computers are "recording devices" from its claim chart. (Ex. 9, '737 patent claim charts, at 8.)  Accordingly, under any plausible construction of the limitation "hand held recording device," the accused Apple computers cannot infringe claims 1 and 4 of the '737 patent.

While iPods and iPhones may be "hand held" devices, they certainly are not "recording devices" as claimed in claims 1 and 4 of the '737 patent.  Indeed, iPods do not allow a user to record and, therefore, the accused iPods cannot infringe either claim 1 or claim 4 of the '737 patent for this initial reason.

Moreover, none of these products has both a "multifunctional switch assembly" and "a separate record switch assembly," as required in claim 1 of the '737 patent.  Plaintiff alleges in its claim charts that the "multifunctional switch assembly" limitation is met by the combination of a multi-touch trackpad, and a keyboard.  (Ex. 9, '737 patent claim charts, at 3.)  Plaintiff further alleges that the "separate record switch assembly" limitation is met by the combination of a trackpad and user interface software.  (*Id.*)  Even assuming, *arguendo*, that these combinations do meet these limitations, as an initial matter none of the other accused Apple products has a multi-touch trackpad such as the one found on many laptop computers.   Indeed, iPods have neither a multi-touch trackpad nor a keyboard.  Furthermore, none of the products that Plaintiff left off its claim charts has both a track pad and user interface software such as is found on a computer.  Therefore, Apple's iPods, iPads and iPhones cannot infringe claim1 of the '737 patent.

Finally, ***none*** of the accused Apple products, including the computers disclosed in Plaintiff's claim charts, can infringe either claim 1 or 4 of the '737 patent because Plaintiff has not, and cannot, show that these products search for the end of a last recorded message and record a new message after such an end. (Ex. 5, '737 patent, claims 1 ("searching for an end of a last recorded message…") and 4 ("search for an end of a last recorded message on the recording medium…").)  Plaintiff claims that the operating system of the accused Apple computers allows for recording a message after the end of the last

APPLE'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(C)

previously-recorded message.  (Ex. 9, '737 patent claim charts, at 6 (claim 1) and 10 (claim 4).)  To support this contention, Plaintiff cites a screenshot that depicts what a user may see when using the QuickTime program.  (*Id.*; Ex. 15, QuickTime screenshot produced by Plaintiff (Apple0897).)  But this is simply a graphical depiction of the program's operation.  It does not show that the internal flash memory in any of the accused Apple products actually searches for the end of a previously-recorded message, to identify the location where it can begin recording the next message, as claimed in claims 1 and 4 of the '737 patent.  Simply put, it is not enough for Plaintiff to say "the limitation is met" and point to a picture that Plaintiff says shows something happening on a flash drive. Plaintiff must provide a basis for its infringement contentions, and it cannot do so for any of the Apple products in this regard.  Accordingly, none of the accused Apple products can infringe either claim 1 or claim 4 for this independent reason.

### 2. The Accused Apple Computers Also Cannot Infringe Claims 6, 9 And 13 Of The '737 Patent Because The Computers Do Not Initiate A Memory Integrity Test When The Internal Flash Memory Is Inserted

Plaintiff asserts claims 6, 9 and 13 of the '737 patent against only the two Apple computers at issue.  (Ex. 2, PICs, at 3.)  Independent claims 9 and 13, and dependent claim 6 (which depends from claim 13) require a user to insert flash memory into a hand held recording device in order to initiate a memory verification test.  (Ex. 5, '737 patent.)

Claim 13, and therefore 6 as well, specifically requires that the memory integrity test be initiated "by manually inserting" the flash drive.  (*Id.*)  However, as explained above, a user does not manually insert flash memory into an Apple computer in the way that a person would insert a flash memory card into another electronic device, such as a camera or a recorder.  Plaintiff apparently agrees, as its claim chart only refers to the software start-up sequence as the initiator of a memory integrity test.  (Ex. 9, '737 patent claim charts, at 14.)  Therefore, under any reasonable construction of "by manually inserting," neither of the accused Apple computers, which are the only products that

Plaintiff alleges infringe these claims, can be found to infringe either claim 13 or claim 6 of the '737 patent.

Claim 9 fares no better. This claim includes the limitations from claims 1 and 4 of the '737 patent that, as discussed above, cannot be found in any of the accused Apple products, including the two accused Apple computers. These limitations include the "hand held recording device," "multifunctional switch assembly," and separate "record switch assembly" limitations that are also present in claims 1 and 4. Therefore, the two accused Apple computers cannot infringe claim 9 for the same reasons that they cannot infringe claims 1 and 4 of the '737 patent.

Furthermore, claim 9 also includes a "memory integrity verification means" limitation, which must perform "with no manual involvement of the user *other than* inserting the removable flash memory digital recording medium into a plug assembly in said recording device." (Ex. 5, '737 patent, claim 9 (emphasis added).) Here again, a person using one of the accused Apple computers does not "insert[] the removable flash memory digital recording medium into a plug assembly in [the] recording device." Moreover, as discussed above, the internal flash memory in the accused Apple computers is not "removable" in the manner disclosed and claimed in the '737 patent. Therefore, the accused Apple computers cannot infringe claim 9 of the '737 patent.

Plaintiff's PICs relating to the '737 patent include significant gaps that cannot be cured because the accused products simply do not meet the limitations of the asserted claims. This is the natural result when, as here, a patentee attempts to stretch its claims well beyond the scope of the actual invention for which the patent was granted in the first place. Accordingly, Plaintiff has no plausible basis for claiming that any of the accused Apple products directly infringe any of the asserted '737 patent claims. Without direct infringement, there can of course be no indirect infringement. Finally, Plaintiff would have to entirely vitiate certain claim limitations in order to rely on the doctrine of

equivalents, which is not permitted.   Therefore, Plaintiff cannot save its infringement contentions by arguing for infringement under the doctrine of equivalents.

### D.   The Accused Apple Products Cannot Infringe The '170 Patent

Plaintiff claims that multiple Apple products, including iPod Touch, iPhones, iPads, and two computers infringe independent claims 1 and 7 of the '170 patent.  (Ex. 2, PICs, at 1-2.)  Plaintiff further claims that Apple's two computers infringe dependent claims 2-4, all of which depend, directly or indirectly, from claim 1.  (*Id.*)  It is well-settled law that dependent claims cannot be infringed if the relevant independent claim is not infringed. Because that is the case here, Apple does not address dependent claims 2-4.

Independent claims 1 and 7 of the '170 patent claim a system and method, respectively, for editing messages in a hand held recorder.  (Ex. 6, '170 patent, claims 1 and 7.)  Like the "hand held" limitation in the '737 patent, discussed above, there is no plausible construction of the "hand held recorder" limitation in claims 1 and 7 of the '170 patent that would support an infringement claim relating to the two accused Apple computers.   Accordingly, for this threshold reason, the two accused Apple computers cannot infringe any of the asserted claims of the '170 patent.

Finally, claim 1 of the '170 patent includes the means-plus-function limitation "means for selecting an edit point within a message."  (Ex. 6, '170 patent, claim 1.)  The only structure disclosed in the '170 patent corresponding to this limitation is a "rocker-pad."  (*Id.* at col. 4, lns. 54-55; Figs. 1A and 1B.)   The disclosed "rocker-pad" is "pivotally mounted upon a pivot support [that] allows the rocker-pad 33 to tilt about said pivot support, being responsive to manual manipulation of said rocker-pad 33.  (*Id.* at col. 4, lns. 54-58.)   The accused iPod Touch, iPads and iPhones do not have any such structure, or an equivalent thereof.   Instead, these products use a Graphical User Interface ("GUI") that allows users to interact with the device, including making selections, by touching the screen.   Therefore, the accused iPod Touch, iPads and iPhones cannot infringe claim 1 of the '170 patent for this additional reason.

As with the '774 and '737 patents, Plaintiff has no basis for its infringement claims regarding the '170 patent.  Under any plausible claim construction, the accused Apple computers are not "handheld recorders," and none of the accused products has a "rocker-pad" or any equivalent structure to perform the function of "selecting an editing point within a message."  Once again, with no direct infringement, there can be no indirect infringement.  Moreover, there is no scope of equivalents for these limitations that would allow Plaintiff to maintain its claims for infringement of the '170 patent, without eliminating certain limitations.  Therefore, Plaintiff has no plausible basis for claiming that Apple infringes the '170 patent, whether directly or indirectly, literally or under the doctrine of equivalents.  The Court should dismiss Plaintiff's infringement claims against Apple with respect to the '170 patent.

### E.    Plaintiff's Indirect Infringement Claims Violate The Court's Order And Should Be Struck

The Court ordered Plaintiff, if it intended to assert indirect infringement claims, to provide the information required to support such claims, namely the identification of the alleged third party direct infringer, and the factual basis for alleging a Defendant's intent. (Dkt. No. 21, Order After Case Management Conference, at 4 (¶ 7) (ordering Plaintiff "to provide as part of the initial infringement contentions an example of how the Defendant indirectly infringes, including the identity of the direct infringer and factual basis for the Defendant's intent.").)  Plaintiff violated this order, and indeed has no basis for alleging indirect infringement by Apple.

In support of its inducement claim, Plaintiff claims merely that "Defendant has been aware of the Asserted Patents and infringement of same at least [as of] the date of the filing of the original Complaint in this matter[,] which was on or about April 1, 2013." (Ex. 2, PICs, at 5.[14])  Plaintiff then claims, without any factual basis, that Apple had

---

[14]  Apple had no knowledge of the asserted patents prior to learning of this lawsuit. Accordingly, Plaintiff has withdrawn its willful infringement claim.  (Ex. 2, PICs, at 7-8.)

"specific intent" to cause its customers to use the accused Apple products in infringing manner.  (*Id.* at 4-5.)  This violates the Court's Order, and falls well short of the minimum needed to sustain a claim for inducement of infringement.  *See DSU Med. Corp.*, 471 F.3d at 1306 ("Inducement requires evidence of culpable conduct, directed to encouraging another's infringement, ***not*** merely that the inducer had knowledge of the direct infringer's activities." (emphasis added)); *Global-Tech Appliances*, 131 S.Ct. at 2069 (confirming that the accused inducer must ***know*** that the third party conduct that it induced constituted infringement).  The facts that Plaintiff alleges, assuming that it could prove these facts, would support at most a finding of recklessness or negligence, which the Supreme Court recently held is not sufficient to meet the high standard for inducement of infringement.  *Global-Tech*, 131 S.Ct. at 2070-71.  The Supreme Court also rejected any standard that permitted "a finding of knowledge when there is merely a 'known risk' that the induced acts are infringing."  *Id.* at 2071.  Thus, Plaintiff has not—and ***cannot***— sufficiently alleged that Apple induces infringement of any of the asserted patents.

Plaintiff's contributory infringement claim is even less sufficient than its inducement claim.  Plaintiff reiterates its claim that Apple knew of the patents and the alleged infringement since the date of the original Complaint, *i.e.*, April 1, 2013.  (Ex. 2, PICs, at 6.)  Plaintiff then claims, once again without any actual support, that Apple sells the accused products knowing that those products are especially made or adapted for use in a patented apparatus or method.  (*Id.*)  However, Plaintiff fails to claim, even in a cursory fashion, that the accused Apple products have no "substantial non-infringing uses," as required to support a contributory infringement claim.  35 U.S.C. § 271(c).  The threshold for "substantial non-infringing uses" is fairly low, requiring only that the uses be "***not*** unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix Corp.*, 581 F.3d at 1327. Issues such as "the use's frequency [and] practicality, the invention's intended purpose, and the intended market" may be taken into consideration when considering whether an accused product has substantial non-infringing

uses. *i4i Ltd.*, 598 F.3d at 851. Thus, so long as a user uses the accused Apple products in their typical fashion, according to the relevant user manuals provided by Apple, which ***does not*** include, *e.g.*, tearing down the products or removing flash memory from within a computer or phone, all of the accused products have "substantial non-infringing uses."

Moreover, Plaintiff also does not claim that any third party infringes any of the asserted claims with any of the accused Apple products. *Cf. Dynacore Holdings*, 363 F.3d at 1274 (holding that, in order to prove contributory infringement, the patentee must first show that a third party has directly infringed the asserted claim). This provides another basis for dismissing Plaintiff's contributory infringement claims.

Plaintiff has not, and clearly cannot, make out a plausible claim for contributory infringement, and the Court should dismiss that claim.

## V.   CONCLUSION

Plaintiff's Preliminary Infringement Contentions are insufficient to show a plausible claim against Apple for infringement of any of the asserted claims, applying even the broadest reasonable claim construction, and it is clear that Plaintiff will not be able to make a plausible claim against Apple. Therefore, the Court should dismiss Plaintiff's infringement claims against Apple.

DATED: July 8, 2013          GREENBERG TRAURIG, LLP

By  *s/* Sarah Barrows
        Sarah Barrows (Bar No. 253278)
        barrowss@gtlaw.com
        Stephen Ullmer (Bar No. 277537)
        ullmers@gtlaw.com
        **GREENBERG TRAURIG LLP**
        4 Embarcadero Center, Suite 3000
        San Francisco, CA 94111
        Tel: (415) 655-1300
        Fax: (415) 707-2010

        James J. DeCarlo (*pro hac vice*)
        decarloj@gtlaw.com
        **GREENBERG TRAURIG LLP**

200 Park Avenue
Florham Park, NJ 07932
Tel:  (973) 360-7900
Fax:  (973) 301-8410

Kevin J. O'Shea (*pro hac vice*)
osheak@gtlaw.com
**GREENBERG TRAURIG LLP**
77 West Wacker Drive
Chicago, IL  60601
Tel:  (312) 456-8400
Fax:  (312) 456-8435

APPLE'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(C)

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 8, 2013 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any counsel of record who have not consented to electronic service through the Court's CM/ECF system will be served by electronic mail, first class mail, facsimile and/or overnight delivery.


By  _s/_ Sarah Barrows

Sarah Barrows