ANTON HANDAL (Bar No. 113812)
anh@handal-law.com
PAMELA C. CHALK (Bar No. 216411)
pchalk@handal-law.com
GABRIEL HEDRICK (Bar No. 220649)
ghedrick@handal-law.com
HANDAL & ASSOCIATES
1200 Third Avenue, Suite 1321
San Diego, California 92101
Tel: 619.544.6400
Fax: 619.696.0323

Attorneys for Plaintiff
e.Digital Corporation

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| e.Digital Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Apple Inc., a California Corporation,<br><br>Defendant. | Case No.   3:13-CV-00785-DMS-WVG<br><br>**E.DIGITAL'S OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)** |
| Apple Inc., a California Corporation,<br><br>Counterclaimant,<br><br>v.<br><br>e.Digital Corporation,<br><br>Counter-Defendant. | Date:   August 9, 2013<br>Time:   1:30 P.M.<br>Judge:  Hon. Judge Dana M. Sabraw<br>Ctrm:   13A (Annex) |

HANDAL & ASSOCIATES
1200 THIRD AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

*OPPOSITION TO MOTION FOR JUDGMENTON THE PLEADINGS*          3:13-CV-00785-DMS-WVG

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................1

II.  LEGAL STANDARD.......................................................................1

   A.  RULE 12(c) MOTIONS .............................................................1

   B.  PATENT INFRINGEMENT.......................................................3

     1.  Direct Infringement .............................................................3

       a. Literal Infringement…………………………………….....3

       b. Infringement Under The Doctrine Of Equivalents……………………..4

     2.  Indirect Infringement ...........................................................4

       a. Inducement…………………………………………………4

       b. Contributory Infringement…………………………………5

III.  ARGUMENT....................................................................................6

   A.  E.DIGITAL'S SELECTION OF APPLE'S MACBOOK AIR AS A REPRESENTATIVE ACCUSED PRODUCT WAS PROPER .....................6

   B.  THE ACCUSED PRODUCTS INFRINGE THE '774 PATENT .................8

     1.  The Accused Products Have "Removable, Interchangeable" Flash Memory ...............................................................................9

     2.  The Flash Memory Provided In The Accused Products Is The "Sole Memory Of The Received Processed Sound Signals" ...................13

   C.  THE ACCUSED APPLE PRODUCTS INFRINGE THE '737 PATENT ...14

     1.  The Accused Products Infringe Both Independent Claims 1 and 4..........14

       a.  The Accused Products Are Hand Held…………………………………..15

       b.  The Accused Products Are Recording Devices………………………17

       c.   The Accused Products Have A "Multifunctional Switch Assembly" And A "Separate Record Switch Assembly"……………………………..18

       d.  The Accused Products Satisfy The Elements Of Claims 1 And 4 Which Teach "Search[ing] For An End Of A Last Recorded Message"…………18

     2.  The Accused Products Infringe Claims 6, 9 And 13 .................................20

   D.  The Accused Products Infringe the '170 Patent............................................21

   E.  E.DIGITAL'S INDIRECT INFRINGEMENT CONTENTIONS ARE SUFFICIENT ......................................................................................23

IV.  CONCLUSION.................................................................................25

*HANDAL & ASSOCIATES*
1200 THIRD  AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*                    CASE NO. 3:13-CV-00785-DMS-WVG

# TABLE OF AUTHORITIES

**CASES**

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007)..................................................................................................................4

*Altiris Inc. v. Symantec Corp.*, 318 F.3d 1363 (Fed. Cir. 2003)...........................16

*Ameranth v. Papa John's USA, Inc.*, -- F.Supp.2d --, 2013 WL 2285171 at *6 (S.D.Cal. Mar. 26, 2013) ..............................................................................3, 20

*Apple Computer v. Articulate Systems, Inc.*, 991 F.Supp. 1189, 1191 (N.D.Cal. 1997)..................................................................................................................6

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1348 (Fed. Cir. 2012)................................................................................................................22

*Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 622-23 (Fed. Cir. 1995) ......................................................................................3, 20

*Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008)................5

*Charles Greiner & Co., Inc. v. Mari-Med Mfg., Inc.*, 962 F.2d 1031, 1034, 22 USPQ2d 1526, 1528 (Fed.Cir. 1992) ..............................................................4

*Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012)...................................................2

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) ..............................................................................................5

*DCG Systems v. Checkpoint Tech.*, 2012 WL 13009161 (N.D.Cal. Apr. 16, 2012)3, 20, 25

*Doyle v. Raley's Inc.*, 158 F.3d 1012, 1014 (9th Cir. 1998) ......................................1

*DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) .........5, 24

*Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ................2

*Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc.*, 305 F.3d 1303, 1315 (Fed. Cir. 2002).......................................................................................................4

*EON Corp. IP Holdings, LLC v. Sensus USA, Inc.*, No. C–12–1011 EMC, 2012 WL 4514138, at *1 (N.D.Cal. Oct.1, 2012) .....................................................5

*E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1369 (Fed. Cir. 2003)............15

*Fleming v. Pickard* 581 F3d 922, 925(9th Cir. 2009) ...............................................1

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004) ............................................................................3

*General Conference Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989)..............................2

HANDAL & ASSOCIATES
1200 THIRD AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

*Global-Tech Appliances Inc. v. SEB S.A*, 131 S.Ct. 2060, 2068 (May 31, 2011).....4

*Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1362–65, 78 U.S.P.Q.2d 1004, 1010–12 (Fed. Cir. 2006) .....................................................5, 6

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir.1989)....................................................................................................................2

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.* 681 F.3d 1323, 1335 (Fed.Cir.2012) ...............................................................................3, 5, 9, 22

*Liebel-Flarsheim Co. v. Medrad Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)............15

*Linear Tech. Corp. v. Int'l Trade Comm'n*, 566 F.3d 1049, 1062 (Fed. Cir. 2009) .4

*McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed.Cir.2007) ......................3

*Metabolite Labs, Inc. v. Lab Corp.,* 370 F.3d 1354, 1364–65 (Fed. Cir. 2005)......25

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932 (2005)...6

*Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1272 (Fed. Cir. 1986)....25

*nCube Corp. v. Seachange Intern., Inc.,* 436 F.3d 1317, 1324–25, 77 U.S.P.Q.2d 1481, 1487 (Fed. Cir. 2006) ...............................................................................5

*Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079, 2003 U.S. Dist. LEXIS 9881 at *13 (N.D.Cal. Mar. 21, 2003) ...............................................3, 20

*Pacing Technologies, LLC v. Garmin Intern., Inc.*, 2013 WL 444642, *2 (S.D.Cal. Feb. 5, 2013)......................................................................................................5

*Philips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ...............................22

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999).9

*Pozen Inc. v. Par Pharmaceutical*, Inc., 696 F.3d 1151, 1167 (Fed. Cir. 2012).......3

*Rackable Systems, Inc. v. Super Micro Computer, Inc.* 2007 WL 1223807, *5, *12 (N.D.Cal 2007) ................................................................................................6, 25

*Sharper Image v. Target*, 425 F.Supp.2d 1056, 1066 (N.D.Cal. 2005) ...................6

*Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1355 (Fed. Cir. 2010) .........6

*Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004) ...........................................................................................................................15

*Technology Licensing Corp. v. Technicolor USA, Inc.*, 2010 WL 4070208 at *1 (E.D.Cal. 2011)..................................................................................................2

*TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1376-77 (Fed. Cir. 2008)................................................................................................4, 23

*U.S. v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003)............................................2

HANDAL & ASSOCIATES
1200 THIRD AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-iii-

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*          CASE NO. 3:13-CV-00785-DMS-WVG

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Vigilos LLC v. Sling Media Inc., et al.*, Case No. 4:11-cv-04117-SBA (N.D.Cal.) 25

*Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998) .................................................................................................................2

*Wager v. Pro*, 575 F.2d 882, 884 (D.C. Cir. 1976) ....................................................2

*Warner-Lambert v. Teva Pharmaceuticals*, 418 F.3d 1326, 1340 (Fed.Cir. 2005) ..8

*Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1360 (Fed. Cir. 2009) ..........................................................................................................................4

**STATUTES**

35 U.S.C. § 271(b) ....................................................................................................4

35 U.S.C. § 271(c) ....................................................................................................5

Patent L.R. 3.6(a) ......................................................................................................8

Patent Local Rule ("Patent L.R.") 3.1.d ...................................................23, 24, 25

Rule 12 ......................................................................................................................3

Rule 12(b)(6) .............................................................................................................2

Rule 12(c) ..........................................................................................................1, 2, 8

*HANDAL & ASSOCIATES*
1200 THIRD AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-iv-

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*          CASE NO. 3:13-CV-00785-DMS-WVG

# I.     INTRODUCTION

As argued below, Apple's "Motion for Judgment on the Pleadings Pursuant to Rule 12(c)" is without merit.  The Motion amounts to little more than a strategic attempt to force e.Digital to prematurely disclose  its claim construction positions well before it has had a chance to conduct discovery or review Apple's invalidity contentions. Indeed, the bulk of Apple's Motion depends entirely on how the Court will ultimately construe certain key claim terms after the *Markman* hearing scheduled in March 2014.

Moreover, contrary to what Apple argues in its Motion, e.Digital's preliminary infringement contentions ("PICs") are sufficient for this stage of the proceedings. Apple's attempt to litigate the merits of the case entirely on the basis of e.Digital's PICs is premature and improper given that no claim construction proceedings have been held, Apple has not yet provided its invalidity contentions, and the parties have not engaged in any fact or expert discovery pursuant to the Court's May 30, 2013 Order After Case Management Conference ("CMO").  (Dkt. #21).  In addition, e.Digital's choice of a single representative accused product fully complies with the Court's CMO despite what Apple erroneously suggests in its Motion. The Motion should be denied.

# II.     LEGAL STANDARD

## A.     RULE 12(c) MOTIONS

"After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c).  A motion for judgment on the pleadings attacks the legal sufficiency of the claims alleged in the complaint.  This Court must construe "all material allegations of the non-moving party as contained in the pleadings as true, and [construe] the pleadings in the light most favorable to the [non-moving] party." *Doyle v. Raley's Inc.,* 158 F.3d 1012, 1014 (9th Cir. 1998); *see also, Fleming v. Pickard* 581 F3d 922, 925(9th Cir. 2009). On a motion for judgment on the pleadings where the

HANDAL & ASSOCIATES
1200 THIRD  AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*                    CASE NO. 3:13-CV-00785-DMS-WVG

1  parties have not conducted discovery, the Court must assume the truth of the

2  factual allegations of the Complaint. *See, Voest-Alpine Trading USA Corp. v. Bank*

3  *of China*, 142 F.3d 887, 891 (5th Cir. 1998).

4       "Judgment on the pleadings is proper when the moving party clearly

5  establishes on the face of the pleadings that no material issue of fact remains to be

6  resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios,*

7  *Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir.1989). "Analysis

8  under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6)

9  because, under both rules, 'a court must determine whether the facts alleged in the

10  complaint, taken as true, entitle the plaintiff to a legal remedy.'" *Chavez v. U.S.,*

11  683 F.3d 1102, 1108 (9th Cir. 2012); *see also Dworkin v. Hustler Magazine, Inc.,*

12  867 F.2d 1188, 1192 (9th Cir. 1989); *Technology Licensing Corp. v. Technicolor*

13  *USA, Inc.*, 2010 WL 4070208 at *1 (E.D.Cal. 2011). A defendant is not entitled to

14  judgment on the pleadings if the complaint raises issues of fact, which, if proved,

15  would support recovery. *General Conference Corp. of Seventh–Day Adventists v.*

16  *Seventh–Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

17  As with Rule 12(b)(6) motions, it is immaterial whether the court believes plaintiff

18  will succeed at trial. *Wager v. Pro*, 575 F.2d 882, 884 (D.C. Cir. 1976).

19       In deciding the motion, a court is generally confined to the pleadings, but

20  "may, however, consider certain materials-documents attached to the complaint,

21  documents incorporated by reference in the complaint, or matters of judicial

22  notice-without converting the motion to dismiss into a motion for summary

23  judgment." *U.S. v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003). This Court has

24  expanded the categories of documents that may be considered on a Rule 12(c)

25  motion by allowing Defendants to base their motion on Plaintiff's PICs. (CMO, ¶

26  5.) Preliminary infringement contentions "must contain 'sufficient specificity to

27  provide defendants with notice of infringement beyond that which is provided by

28  the mere language of the patents themselves,' but need not be so detailed as to

HANDAL & ASSOCIATES
1200 THIRD  AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-2-

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*       CASE NO. 3:13-CV-00785-DMS-WVG

1   transform the PICs into a 'forum for litigation of the substantive issues.'"

2   *Ameranth v. Papa John's USA, Inc.*, -- F.Supp.2d --, 2013 WL 2285171 at *6

3   (S.D.Cal. Mar. 26, 2013), *quoting Network Caching Tech., LLC v. Novell, Inc.*, No.

4   C-01-2079, 2003 U.S. Dist. LEXIS 9881 at *13 (N.D.Cal. Mar. 21, 2003); *DCG*

5   *Systems v. Checkpoint Tech.*, 2012 WL 13009161 (N.D.Cal. Apr. 16, 2012)

6   ("These rules do not, as is sometimes misunderstood, 'require the disclosure of

7   specific evidence nor do they require a plaintiff to prove its infringement case'").

8                    **B.    PATENT INFRINGEMENT**

9                         **1.    Direct Infringement**

10          A complainant must establish infringement of the asserted patents either

11   literally or under the doctrine of equivalents.  *See, Pozen Inc. v. Par*

12   *Pharmaceutical*, Inc., 696 F.3d 1151, 1167 (Fed. Cir. 2012).  In the context of

13   motions to dismiss under Rule 12 and federal pleading standards, a plaintiff need

14   not "describe precisely how each element of the asserted claims are practiced" in

15   order to assert a plausible direct infringement claim, but rather only needs to

16   satisfy the requirements of Form 18 in the Appendix to the Federal Rules of Civil

17   Procedure.  *In re Bill of Lading Transmission & Processing Sys. Patent Litig.* 681

18   F.3d 1323, 1335 (Fed.Cir.2012).  Such minimal pleading satisfies the need to

19   "place the alleged infringer on notice as to what he must defend."  *McZeal v. Sprint*

20   *Nextel Corp.*, 501 F.3d 1354, 1357 (Fed.Cir.2007).

21                         **a.    Literal Infringement**

22          To prove literal infringement, the patentee must establish that the accused

23   device contains each limitation of the asserted claim, which is referred to as the

24   "all elements rule."  *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford*

25   *Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004).  An accused product that

26   sometimes embodies a claimed device, but not always, nevertheless infringes.  *Bell*

27   *Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 622-23 (Fed.

28   Cir. 1995).  Testing of an accused device in an allegedly infringing manner

HANDAL & ASSOCIATES
1200 THIRD  AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-3-

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*                    CASE NO. 3:13-CV-00785-DMS-WVG

constitutes direct infringement. *See, e.g.*, *Linear Tech. Corp. v. Int'l Trade Comm'n*, 566 F.3d 1049, 1062 (Fed. Cir. 2009). The literal infringement determination, whether properly construed claims read onto an accused product or method, is a question of fact. *Charles Greiner & Co., Inc. v. Mari-Med Mfg., Inc.*, 962 F.2d 1031, 1034, 22 USPQ2d 1526, 1528 (Fed.Cir. 1992).

### b.     Infringement Under The Doctrine Of Equivalents

"Infringement under the doctrine of equivalents may be found when the accused device contains an 'insubstantial' change from the claimed invention. Whether equivalency exists may be determined based on the 'insubstantial differences' test or based on the 'triple identity' test." *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1376-77 (Fed. Cir. 2008) (citations omitted). "An element in the accused product is equivalent to a claim limitation if the differences between the two are 'insubstantial' to one of ordinary skill in the art." *Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1360 (Fed. Cir. 2009), *quoting Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc.*, 305 F.3d 1303, 1315 (Fed. Cir. 2002). Under the "triple identity" test, a complainant must prove "on a limitation-by-limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product." *Id.*

### 2.     Indirect Infringement

### a.     Inducement

Under 35 U.S.C. § 271(b), a complainant claiming induced infringement must prove (1) instances of direct infringement by a third party; and, (2) that the respondent knowingly induced infringement and had specific intent to encourage another's infringement. *ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007). Induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement. *Global-Tech Appliances Inc. v. SEB S.A*, 131 S.Ct. 2060, 2068 (May 31, 2011). The knowledge

HANDAL & ASSOCIATES
1200 THIRD AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

1   element can be satisfied by the mere filing of a complaint for patent infringement.

2   *Pacing Technologies, LLC v. Garmin Intern., Inc.*, 2013 WL 444642, *2 (S.D.Cal.

3   Feb. 5, 2013), *citing EON Corp. IP Holdings, LLC v. Sensus USA, Inc.,* No. C–12–

4   1011 EMC, 2012 WL 4514138, at *1 (N.D.Cal. Oct.1, 2012) ("Though the claims

5   for indirect infringement both require knowledge of the patent, the Federal Circuit

6   has recently held that post-filing knowledge is sufficient to meet this requirement."

7   (*citing In re Bill of Lading Transmission and Processing Sys. Patent Litig. ("R+L*

8   *Carriers"),* 681 F.3d 1323, 1345 (Fed. Cir. 2012)).

9       Specific intent requires a "showing that the alleged infringer's actions

10  induced infringing acts and that he knew or should have known his actions would

11  induce actual infringements."  *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293,

12  1304 (Fed. Cir. 2006) (*en banc* in relevant part).  A patentee can establish intent to

13  induce infringement through circumstantial evidence.  *Broadcom Corp. v.*

14  *Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008).

15              **b.    Contributory Infringement**

16      Under 35 U.S.C. § 271(c), a seller of a component of an infringing product

17  may be liable for contributory infringement if: (1) there is direct infringement by a

18  third party; (2) the contributory infringer knows that the combination for which its

19  component was made was both patented and infringing; and (3) there are no

20  substantial noninfringing uses for the component part.  *Cross Med. Prods., Inc. v.*

21  *Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005).

22      A court may find contributory infringement even if a party did not itself

23  import the accused component into the United States or sell the accused

24  component in the United States.  *See, e.g., Golden Blount, Inc. v. Robert H.*

25  *Peterson Co.*, 438 F.3d 1354, 1362–65, 78 U.S.P.Q.2d 1004, 1010–12 (Fed. Cir.

26  2006); *nCube Corp. v. Seachange Intern., Inc.,* 436 F.3d 1317, 1324–25, 77

27  U.S.P.Q.2d 1481, 1487 (Fed. Cir. 2006).

28      "[T]he only intent required of [a] defendant is the intent to cause the acts

HANDAL & ASSOCIATES
1200 THIRD AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

-5-

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*                    CASE NO. 3:13-CV-00785-DMS-WVG

1   that constitute infringement." *Rackable Systems, Inc. v. Super Micro Computer,*

2   *Inc.* 2007 WL 1223807, *5, *12 (N.D.Cal 2007) (*citing Golden Blount*, *supra*,

3   438 F.3d at 1364). A plaintiff need only establish a minimal scienter

4   requirement—that the accused contributory infringer knew that its component was

5   included in a combination that was patented and infringing. *Metro-Goldwyn-*

6   *Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932 (2005); *Spansion, Inc. v.*

7   *Int'l Trade Comm'n*, 629 F.3d 1331, 1355 (Fed. Cir. 2010). The requisite intent to

8   induce may be inferred from all of the circumstances, such as giving a direct

9   infringer instructions on how to use a patented process or designing a product to

10  infringe. *Apple Computer v. Articulate Systems, Inc.*, 991 F.Supp. 1189, 1191

11  (N.D.Cal. 1997); *see also Sharper Image v. Target*, 425 F.Supp.2d 1056, 1066

12  (N.D.Cal. 2005) (defendants' sales of accused product in combination with

13  instruction manuals constituted some evidence of knowing intent to induce

14  infringement sufficient to defeat defendant's motion for summary judgment).

15  **III.   ARGUMENT**

16  **A.   E.DIGITAL'S SELECTION OF APPLE'S MACBOOK AIR AS**

17  **A REPRESENTATIVE ACCUSED PRODUCT WAS PROPER**

18      This Court's CMO provides, "Plaintiff's initial infringement contentions,

19  prepared in accordance with the format set forth in the local rules, ***shall consist of***

20  ***one representative product*** and/or process for each of the five selected claims of

21  each patent asserted against that Defendant." (Emphasis added.) (CMO, Dkt# 21,

22  p. 4:4-6.) The CMO provides for no exceptions or qualifications.

23      Apple asserts that e.Digital's choice of one representative accused product

24  was improper because it "ignores the spirit of the Court's Order" and that "Plaintiff

25  did not tell the Court that it intended to assert multiple patents against multiple

26  product families, none of which operate in the same manner as one another for

27  purposes of the asserted claims." (Apple's Memorandum In Support Of Its Motion

28  For Judgment On The Pleadings ("Motion") at 10:21-11:4.) Based on these

HANDAL & ASSOCIATES
1200 THIRD  AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-6-

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*          CASE NO. 3:13-CV-00785-DMS-WVG

erroneous contentions, Apple asks that the Court order e.Digital to withdraw its infringement allegations as to Apple products other than the MacBook Pro and MacBook Air.  (*Id.* at 12:1-4.)  None of Apple's assertions are correct.

First, Apple concedes that e.Digital's submission of PICs for one representative product is "literally consistent" with the Order.  This should end the issue, but Apple argues that e.Digital should do more than what the Court ordered without providing any authority that would support such a conclusion.  Second, at the time of the case management conference ("CMC"), it was no secret to Apple (or the Court) that e.Digital is asserting multiple patents against multiple Apple product families inasmuch as the products are specifically identified in the Complaint.  (Complaint, Dkt# 1, ¶s 14, 23-25, 34.)  During the CMC, the Court specifically addressed the issue of whether it should limit e.Digital to one representative product in its PICs.  Apple, whose counsel appeared at the conference, raised no objections during the hearing or after entry of the CMO. Apple has therefore waived any objections it may have had to such limitations.

Given the Court's clear order that preliminary infringement contentions be provided for only one representative product, e.Digital naturally, and in full compliance with the CMO, selected the MacBook Air as it is one of the only two products that are accused with respect to each of the selected claims.  (*See id.* (iPhone and iPad products are not accused with respect to the '774 patent and claims 6, 9 or 13 of the '737 patent).)  Had e.Digital selected one of the iPhone or iPad products, Apple would have complained that not all of the asserted patents were represented in the PICs.  Had e.Digital provided infringement contentions for all of the accused products, as Apple is now proposing, e.Digital would have been in violation of the CMO.

In fact, the Court already contemplated that there may be some differences in the accused products as the CMO states that e.Digital "may provide infringement contentions for additional accused products and/or processes

-7-

HANDAL & ASSOCIATES
1200 THIRD  AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*          CASE NO. 3:13-CV-00785-DMS-WVG

1   following the issuance of the claim construction order as provided in Patent L.R.

2   3.6(a)." (CMO, at ¶ 8.) In light of this provision, Apple fails to adequately explain

3   why additional infringement contentions are necessary at this stage. Instead, it

4   asserts in conclusory fashion that the iPod, iPhone and iPad products do not

5   "operate in the same manner as the accused computers, or each other, for purposes

6   of the asserted claims." (Motion, 11:15-16.) As an initial matter, this is a factual

7   question that far exceeds the scope of the motion at hand. *See, e.g., Warner-*

8   *Lambert v. Teva Pharmaceuticals*, 418 F.3d 1326, 1340 (Fed.Cir. 2005). Even if

9   that were not the case, aside from showing cosmetic differences (Motion at 5:11-

10  6:21), Apple fails to identify any of the ways the products do not "operate in the

11  same manner" or why those differences are material.

12      Finally, Apple fails to explain how its request for an order that e.Digital

13  withdraw some of its infringement allegations is authorized by Rule 12(c)--the *sole*

14  statutory basis on which its Motion is based. Indeed, Apple cites no authority that

15  would permit the Court to force e.Digital to withdraw valid claims under Rule

16  12(c), particularly in light of Apple's concession that e.Digital has "literally"

17  complied with the Court's CMO.

18      **B.    THE ACCUSED PRODUCTS INFRINGE THE '774 PATENT**

19      The preamble of Claim 33 of the '774 patent describes in pertinent part, "A

20  record/playback device for use with a removable, interchangeable, flash memory

21  recording medium." ('774 patent, Apple Exhibit 1 (Dkt# 35-3), Claim 33.)[1] The

22  limitations of Claim 33 disclose in pertinent part, "a receiving socket electrically

23  coupled to the control circuitry and configured for electrical coupling with a flash

24  memory module which operates as sole memory of the received processed sound

25  electrical signals." (*Id.*) The '774 patent is asserted only against Apple's

26  _____

27  [1] In order to conserve resources and to avoid burdening the Court with duplicative
    exhibits, e.Digital will refer to defendant Apple's exhibits whenever possible rather

28  than offering the identical exhibit as part of e.Digital's opposition.

HANDAL & ASSOCIATES
1200 THIRD AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

-8-

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*     CASE NO. 3:13-CV-00785-DMS-WVG

1    MacBook Air and MacBook Pro products.  (Complaint, ¶ 34.)

2         Relying on its own self-serving constructions of Claim 33 of the '774 patent,

3    Apple asserts that the SSD cards of its MacBook Air products are not removable

4    and interchangeable as those terms are used in the preamble and are not the "sole

5    memory" of the accused products.  (Motion, 13:1-16:28.)  As shown below,

6    Apple's claim constructions are unduly narrow and, in any event, a determination

7    as to what constitutes the correct construction would be premature.  Affording

8    e.Digital the broadest possible interpretation of the claims and construing all

9    inferences in e.Digital's favor, as the Court must at this stage of the proceedings,

10   the facts do not support granting Apple's Motion.

11        **1.    The Accused Products Have "Removable, Interchangeable"**

12        **Flash Memory**

13        As an initial matter, contrary to Apple's assertion (Motion at 12, fn. 8),

14   nowhere in the PICs does e.Digital assert that the preamble of claim 33 is a

15   limitation.  (Apple Exhibits 2 (Dkt# 35-4) and 8 (Dkt# 35-10).)  In fact, a preamble

16   is not limiting unless, "when read in the context of the entire claim, [it] recites

17   limitations of the claim, or, if the claim preamble is 'necessary to give life,

18   meaning, and vitality' to the claim, then the claim preamble should be construed as

19   if in the balance of the claim."  *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182

20   F.3d 1298, 1305 (Fed. Cir. 1999).  Aside from Apple's misplaced reliance on the

21   PICs, Apple makes no showing that the preamble should be construed as limiting.

22   In any event, such a determination is a matter for claim construction and is

23   premature at the pleading stage.  *See R+L Carriers*, *supra*, 681 F.3d 1323 at fn. 13

24   ("claim construction at the pleading stage – with no claim construction processes

25   undertaken – was inappropriate").

26        e.Digital included a discussion of the preamble in its PICs solely because (1)

27   it is part of the language of the claim, even if not a limitation, and (2) to

28   demonstrate that, even if it is ultimately considered a limitation, the accused

HANDAL & ASSOCIATES
1200 THIRD  AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-9-

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*                    CASE NO. 3:13-CV-00785-DMS-WVG

1    products still infringe.  Indeed, e.Digital's PICs contain a discussion of every

2    preamble of every independent claim asserted.  Surely, Apple does not believe that

3    e.Digital is conceding that each and every preamble of the asserted patents is

4    limiting.  To the extent this has caused any confusion or the Court infers from

5    those discussions that e.Digital is contending the preamble is a limitation, e.Digital

6    requests leave to amend its contentions to clarify its position.

7       Nevertheless, even if the preamble is determined to be a limitation, its terms

8    must be afforded their broadest possible construction at this stage of the

9    proceedings.  (*Id.* at fn. 13  ("We afford the claims their broadest possible

10    construction at this stage of the proceedings."))  Accordingly, e.Digital's PICs

11    demonstrate that the flash memory modules of the representative MacBook Air

12    product are both removable and interchangeable.

13       The PICs point to a publicly available article stating that the MacBook Air's

14    flash memory module (in this case a SSD card) is not soldered to the motherboard

15    and is "removable."  ('774 patent PICs, Apple Exhibit 8 at p. 2; *see also* Exhibit A

16    to Declaration of Gabriel G. Hedrick

17    ("Hedrick Decl.") at p. 1.)  The PICs

18    also include a photograph (shown right)

19    of how the SSD card is inserted and/or

20    removed from the receiving socket of

21    the accused device.  ('774 patent PICs,



22    Apple Exhibit 8 at p. 8; *see also* Apple Exhibit 13 (Dkt# 35-15) at p. 3.) Apple

23    points to a discussion in the specifications describing only the interconnection of

24    the memory module of the invention and the receiving socket.  ('774 patent, Apple

25    Exhibit 1 (Dkt# 35-3), at 4:59-5:67.[2])  The subject portion of the specification, part

26

27

28

_____

[2] Citations in this brief to the claims of the asserted patents will simply refer to the claim number.  Citations to the specifications of the asserted patents in this brief are in the following format:  " '000 patent at xx:yy", where "xx" represents the

HANDAL & ASSOCIATES
1200 THIRD  AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-10-

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*      CASE NO. 3:13-CV-00785-DMS-WVG

of which was excluded by Apple, states:

> The interconnect means 28 comprises a socket 30 configured to be PCMCIA compatible and sized to receive the flash memory module 29. When inserted within the socket 30, pins of the module 29 seat within pin receptacles of the interconnect means 28. In this sense, the small memory module is functionally similar to a cassette, in that it is inserted and removed at will. Furthermore, it can be readily inserted in other compatible machines for interchangeable use.

(*Id.*)

Neither this provision nor the claims say where this interconnection must take place or what steps must be taken before the memory module is coupled to the receiving socket. It is simply referring to the actual physical connection between the module and the receiving socket. Apple, nevertheless, erroneously contends that its products do not have a removable flash memory module because it "resides *inside the computer* – i.e., it is not accessible to users, and cannot be 'inserted and removed at will' as described in the '774 patent." (Emphasis in original.) (Motion at 14:11-13.) However, under Apple's unduly narrow interpretation, even the cassette tape analogized in the above-quoted specifications would not be removable. Cassette tapes, after insertion in the receiving socket, often, if not exclusively, reside inside the playback device – whether it be a home stereo, a car stereo, or a dictation device. Typically, a user must execute a series of steps to remove the cassette tape – usually by pressing a stop and/or eject button.[3] Thus, Apple's narrow construction would hold that the cassette tape is not removable as that term is used in the patent, because, when in use, the cassette tape resides inside the record/playback device.

---

column number and "yy" represents the line number.

[3] With the MacBook Air, a user only has to unscrew the bottom of the device using a common screwdriver, which involves no expertise beyond the ability to use a screwdriver. (*See* Apple Exhibit 12 at p. 3.)

**HANDAL & ASSOCIATES**
1200 THIRD  AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-11-

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*          CASE NO. 3:13-CV-00785-DMS-WVG

Apple also selectively quotes the specifications to argue that the patent specifically excludes flash memory contained in handheld devices such as the MacBook Air.  (Motion at 13:19-26.)  The relevant portion of the specification is as follows:

> An electronic interconnect means 28 is electrically coupled to the memory circuitry 24 and is configured for removable, electrical coupling with a flash memory module 29 capable of retaining recorded digital information for storage in nonvolatile form. The flash memory module is a digital memory storage device manufactured by Intel Corporation of Santa Clara, California (see US. Pat. No. 5,267,218). This module 29 includes a plurality of memories arranged in an array, which can be electrically programmable or erasable. Prior applications have been substantially limited to storage of data as part of a computer memory. ***Their use with a handheld dictation device has not been noted, perhaps because of the traditional expectation for need of <u>a moving recording media</u>***.

(Emphasis added.) ('774 patent at 4:14-27.)

Thus, the distinction made of the prior art is not that the memory is contained within a computer, but that flash memory had not previously been incorporated into handheld recording devices.  In other words, the patentee is distinguishing the traditional desktop computer of the prior art from the handheld recording device of the patented invention.  Apple's attempt to exclude all "computers" is overreaching.  Under Apple's erroneous interpretation of this section of the specifications, any digital device or device otherwise containing a CPU or microprocessor could be considered a "computer," even if hand held and containing a removable flash memory module as the Accused Products at issue here.  However, that is clearly not the distinction being made in the above-quoted portion of the specifications.  In light of the foregoing and since the claims must be afforded the broadest possible construction at this stage of the proceedings, Apple's narrow construction of "removable" must be rejected.

Apple lastly argues that the flash memory of the representative MacBook

HANDAL & ASSOCIATES
1200 THIRD  AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-12-

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*          CASE NO. 3:13-CV-00785-DMS-WVG

1   Air product is not "interchangeable" because the article cited in the PICs claims

2   that " 'the [flash] drive is smaller and not compatible with previous MacBook Air

3   models…'" and that " 'the connector for this model's flash memory module is

4   slightly different than last year." (Motion at 15:2-16.)  However, the logical

5   inference from these statements is that the flash memory module is interchangeable

6   at least between models of the same generation and possibly any non-Apple

7   devices that may contain the same flash memory architecture.  Apple does not

8   dispute this.

9        As set forth above, Apple's motion relies entirely on self-serving claim

10  constructions, the determination of which is inappropriate at the pleading stage of

11  this litigation.  Under the broadest interpretation of the claims, to which e.Digital is

12  entitled, the accused MacBook Air device contains a removable, interchangeable

13  flash memory.

14          **2.      The Flash Memory Provided In The Accused Products Is**

15                  **The "Sole Memory Of The Received Processed Sound**

16                  **Signals"**

17      Apple asserts that the documents cited in e.Digital's preliminary

18  infringement contentions show that the accused representative MacBook Air

19  device does not meet the "sole memory" limitation of claim 33 of the '774 patent.

20  Apple is wrong for a number of reasons.

21      First, Apple's argument relies on its own self-serving interpretation of the

22  term "sole memory of the received processed sound electrical signals."  (Motion at

23  16:1-5.)  As stated previously, claim construction is inappropriate at this stage of

24  the proceedings and, in considering the present motion, the Court must afford the

25  claims their broadest possible scope.

26      Furthermore, this issue is presently before the Court, at least in part, on

27  Defendants' motion to apply collateral estoppel with respect to another District

28  Court's construction of the term "sole memory…" as contained in now-canceled

**HANDAL & ASSOCIATES**
1200 THIRD  AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-13-

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*                    CASE NO. 3:13-CV-00785-DMS-WVG

1  claims 1 and 19 of the '774 patent.  (*See* Dkt# 31 and 34.)  As e.Digital points out
2  in its opposition to that motion, the '774 patent contemplates the use of RAM.
3  (*See* Dkt# 34 at pp. 9:9-12:5 and exhibits cited therein.)  Thus, the fact that the
4  documents cited by e.Digital in its PICs disclose that the representative MacBook
5  Air product has RAM is not evidence of non-infringement.

6       Finally, even if Apple's flawed construction of the term "sole memory of the
7  received processed sound electrical signals" were correct, the documents cited in
8  support of e.Digital's PICs do not disclose the role of RAM in the Apple device
9  and do not disclose that the RAM of the accused products operates as a "memory
10  of the received processed sound electrical signals."  Rather, Apple's own web site,
11  as cited in the PICs, suggests that Flash
12  memory is the only memory of the  Faster all–flash storage.
    Ready. Set. Done.
13  received processed sound signals.  ('774
14  patent PICs, Apple Exhibit 8, at p. 8.)

15  **C.    THE ACCUSED APPLE PRODUCTS INFRINGE THE '737**
16       **PATENT**

17       **1.    The Accused Products Infringe Both Independent Claims 1**
18            **and 4**

19       Relying almost solely on its own self-serving, conclusory statements, Apple
20  argues that its products do not infringe claims 1 and 4 of the '737 patent because
21  (1) the accused Apple MacBooks are not handheld, (2) none of the accused devices
22  are recording devices, (3) none of the accused products has a multifunctional
23  switch assembly and a separate record switch assembly and (4) e.Digital has not
24  shown that the accused products search for the end of a last recorded message,
25  identify a segment of flash memory past the end of a last recorded message and
26  begin recording a new message at point after the end of a last recorded message as
27  disclosed in the claims.  As shown below, Apple is wrong on each point.
28       With respect to the first 3 points above, Apple has failed on this motion for

HANDAL & ASSOCIATES
1200 THIRD  AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-14-

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*                    CASE NO. 3:13-CV-00785-DMS-WVG

1   judgment *on the pleadings* to even make an effort to explain how e.Digital's

2   pleadings (and PICs) are insufficient.  Rather, Apple introduces factual disputes

3   based on its own unsupported, conclusory statements of non-infringement.  With

4   respect to the final point above, Apple's demand that e.Digital provide a detailed

5   explanation of the proprietary internal workings of Apple's own products is

6   unreasonable and premature.

7               **a.      The Accused Products Are Hand Held**

8               Apple argues that the accused MacBook Pro and MacBook Air devices are

9   not "hand held" because a user cannot hold and operate the device with the same

10  hand.  (Motion at pp. 17:8-19.)  However, independent claims 1 and 4 contain no

11  such requirement.  ('737 patent,

12  Apple Exhibit 5 (Dkt# 35-7),

13  Claims 1 and 4.)  As shown at

14  right, e.Digital's PICs show that

15  the accused Apple MacBooks are

16  "hand held" devices that can be

17  held with one hand, freeing up the



18  other hand to operate the device.  ('737 patent PICs, Apple Exhibit 9 (Dkt# 35-11)

19  at p. 3.)

20              Apple does not question the sufficiency of the PICs, but instead once again

21  argues claim construction.  In so doing, Apple improperly attempts to incorporate a

22  portion of the specifications into the limitations of claims 1 and 4.  (Motion at p.

23  17:13-17.)  This is not permitted.  *Superguide Corp. v. DirecTV Enterprises, Inc.*,

24  358 F.3d 870, 875 (Fed. Cir. 2004); *Liebel-Flarsheim Co. v. Medrad Inc.*, 358 F.3d

25  898, 906 (Fed. Cir. 2004) (discussing recent cases wherein the court expressly

26  rejected the contention that if a patent describes only a single embodiment, the

27  claims of the patent must be construed as being limited to that embodiment); *E-*

28  *Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1369 (Fed. Cir. 2003)

HANDAL & ASSOCIATES
1200 THIRD  AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-15-

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*                    CASE NO. 3:13-CV-00785-DMS-WVG

1  ("Interpretation of descriptive statements in a patent's written description is a

2  difficult task, as an inherent tension exists as to whether a statement is a clear

3  lexicographic definition or a description of a preferred embodiment. The problem

4  is to interpret claims 'in view of the specification' without unnecessarily importing

5  limitations from the specification into the claims."); *Altiris Inc. v. Symantec Corp.*,

6  318 F.3d 1363 (Fed. Cir. 2003) (Although the specification discussed only a single

7  embodiment, the court held that it was improper to read a specific order of steps

8  into method claims where, as a matter of logic or grammar, the language of the

9  method claims did not impose a specific order on the performance of the method

10 steps, and the specification did not directly or implicitly require a particular order).

11       More importantly, the portions of the specifications cited ('737 patent at

12 3:55-56 and Fig. 1A) do no support Apple's position.  Fig. 1A, cited by Apple is

13 shown at right.  Col. 3, lines 55-56 cited by Apple

14 states, "Fig. 1A illustrates the features of ___*a*___ hand held,

15 solid state recording device."  (Emphasis added.)

16 Nothing in either of the cited portions of the

17 specifications can reasonably be construed as a

18 specific size or functional limitation (e.g., held and

19 used with the same hand).  In fact, depending on the



Fig. 1A

20 size of the device depicted in Fig. 1A, one could

21 imagine that a user holding the device with their left hand might be unable to

22 activate the switches on the right side of the device with the same hand and *vice*

23 *versa*.  In that case, under Apple's narrow construction of handheld, even the

24 device depicted in Fig. 1A would not satisfy the "hand held" requirement.  Indeed,

25 if the patentees wanted to limit the claims as advocated by Apple, it knew how to

26 do so.  (*See* '774 patent (of which the '737 patent is a continuation-in-part),

27 dependent claim 6 ("hand held, dictation recording device, configured operation

28 with one-hand control means").)

*HANDAL & ASSOCIATES*
1200 THIRD  AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

-16-

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*        CASE NO. 3:13-CV-00785-DMS-WVG

1    Based on the foregoing, Apple's Motion, to the extent it relies on its flawed,

2    self-serving interpretation of "handheld" should be denied.

3              **b.      The Accused Products Are Recording Devices**

4    Apple argues that the accused products are not recording devices and

5    incorrectly states that e.Digital's PICs do not allege the accused products are

6    recording devices.  On the contrary, the PICs state, "The accused device is a hand

7    held device that is capable of recording and playing back voice, video, photo and

8    other data messages." ('737 patent

9    PICs, Apple Exhibit 9 (Dkt# 35-11) at

10    pp. 2, 8.) The PICs further show (as

11    seen in the screen shot at right) that the

12    representative MacBook Air product is capable of at least audio recording.  (*Id.* at

13    pp. 3, 9.)

14    Apple also asserts, without citing to any evidence, that "iPods do not allow a

15    user to record and, therefore, the accused iPods cannot infringe either claim 1 or

16    claim 4 of the '737 patent."  (Motion at p. 18:6-8.)  By this statement, Apple

17    implicitly concedes that the other accused devices "allow a user to record."

18    Moreover, although the Court has not ordered e.Digital to submit preliminary

19    infringement contentions for all of the accused products at this stage of the

20    proceedings, e.Digital will ultimately show that Apple's assertion is plainly false.

21    By way of example, the iPod Touch User Guide shows the accused product

22    contains a camera and microphone for recording audio, video and photographic

23    messages and can record voice memos:

24

25

26

27    (Exhibit B to Hedrick Decl. (iPod Touch iOS 6.1 User Guide) at pp. 7, 89; *see also*

28    Exhibit C to Hedrick Decl. (iPod Classic User Guide) at p. 46.)   All of Apple's

HANDAL & ASSOCIATES
1200 THIRD AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-17-

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*          CASE NO. 3:13-CV-00785-DMS-WVG

1   conclusory assertions throughout the motion must therefore be taken with a grain

2   of salt.  As set forth above, e.Digital's PICs are sufficient and Apple's arguments

3   to the contrary are patently wrong.

4             **c.**       **The Accused Products Have A "Multifunctional**

5                      **Switch Assembly" And A "Separate Record Switch**

6                      **Assembly"**

7       Apple next argues, once again, in conclusory fashion, that the accused

8   products do not have a multifunctional switch assembly and separate record switch

9   assembly.  (Motion at 18:9-10.)  Apple concedes the PICs identify the trackpad and

10  keyboard of the representative MacBook Air product as meeting this limitation.

11  (*Id.* at 18:10-13.)  While Apple apparently disagrees with that contention, it fails to

12  show how the PICs are insufficient such as would warrant judgment on the

13  pleadings.  Apple does argue, without citation to any evidence, that the other

14  accused products do not have a track pad or keyboard.  (*Id.* at 18:14-20.)

15  However, the Court has limited e.Digital to only one representative product at this

16  stage of the proceedings.  When the Court permits e.Digital to submit additional

17  PICs, e.Digital will show that the touchscreen switches, rocker pads and/or other

18  switches of the other accused devices meet this limitation.  Until such additional

19  PICs are allowed, Apple's motion is premature and should be denied.

20             **d.**       **The Accused Products Satisfy The Elements Of**

21                      **Claims 1 And 4 Which Teach "Search[ing] For An**

22                      **End Of A Last Recorded Message…"**

23       Claim 1 discloses in part a "recording means coupled to the circuit board and

24  activated by the record switch assembly and including means for (i) searching for

25  an end of a last recorded message, (ii) identifying a point after the end of the last

26  recorded message where the new message may begin, and (iii) beginning recording

27

28

*HANDAL & ASSOCIATES*
1200 THIRD  AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-18-

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*       CASE NO. 3:13-CV-00785-DMS-WVG

1    of the new message at the identified point." ('737 patent, claim 1.)[4]  In its PICs,

2    e.Digital alleges:

> The accused device family ships with an operating system.  An
> operating system (OS) is a collection of software that manages
> computer hardware resources and provides common services for
> computer programs. The operating system is a vital component of the
> system software in a computer system.  The accused device family's
> operating system is Apple's OS X which uses the Mac OS Extended
> (Journaled)/HFS Plus file system.
>
> A file system can be thought of as an index or database containing the
> physical or logical location of every piece of data on a storage device.
> HFS Plus uses a catalog file and an allocation file to keep track of
> used and unused blocks.
>
> HFS Plus enables the operating system to search and find the end of a
> last recorded message and find where a new message may begin. The
> operating system would then allow the recording to begin at the
> identified point.

15   ('737 patent PICs, Apple Exhibit 9 (Dkt# 35-11) at p. 6; *see also*, *id.* at p. 10.)

16       Apple wrongly argues that e.Digital merely cites to "a graphical depiction of

17   the program's operation" as evidenced by a screen shot of a QuickTime operation.

18   (Motion at 19:2-5.)  This is not correct.  Apple is referring to evidence cited in

19   support of a completely different claim limitation, which relates to playback of

20   recorded messages.  ('737 patent PICs, Apple Exhibit 9 (Dkt# 35-11) at p. 7.)

21       With respect to the claim limitation discussed by Apple in their motion,

22   e.Digital cites to and incorporates portions of documents generally describing the

23   functionality of the file system of Apple's OS X operating system, which disclose,

24   among other things that the system uses an "allocation file" which "is a special file

25   which specifies whether an allocation block is used or free" and a catalog file.

26   ('737 patent PICs, Apple Exhibit 9 (Dkt# 35-11) at p. 6.)  The cited documents

27   —————————————————

28   [4] Claim 4 is a method claim that contains nearly identical language.

HANDAL & ASSOCIATES
1200 THIRD  AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-19-

describe a catalog file as:

> a special file that describes the folder and file hierarchy on a volume. The catalog contains vital information about all the files and folders on a volume, as well as the catalog information, for the files and folders that are stored in the catalog file.  The catalog file is organized as a B-tree (or "balanced tree") to allow quick and efficient searches through a large folder hierarchy.

(*Id.*; *see also*, *id.* at p. 10.)

These excerpts suggest that, because the file system keeps track of used and free memory blocks in the flash memory, it will not record over previously recorded messages, which would appear as used blocks within the flash memory. The purpose of the allocation file is to keep this from happening. The Accused Product then must necessarily search for an empty block located, at least sometimes,[5] after the used block to begin recording a new message.  e.Digital expects that fact discovery will provide additional support for its position and, to that extent, judgment on the pleadings at this stage is premature.  *Ameranth v. Papa John's USA, Inc.,* -- F.Supp.2d --, 2013 WL 2285171 at *6 (S.D.Cal. Mar. 26, 2013), *quoting Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079, 2003 U.S. Dist. LEXIS 9881 at *13 (N.D.Cal. Mar. 21, 2003); *see also DCG Systems v. Checkpoint Tech.*, 2012 WL 13009161 (N.D.Cal. Apr. 16, 2012) ("These rules do not, as is sometimes misunderstood, 'require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case.'")

## 2.    The Accused Products Infringe Claims 6, 9 And 13

Claims 9 and 13 disclose a method and device for performing a flash memory medium integrity test that requires no manual involvement of the user other than inserting the flash memory module into the plug assembly of the device. ('737 patent, claims 9 and 13.)  Claim 6 depends from claim 13.  (*Id.*, claim 6.)

---

[5] An accused product that sometimes embodies a claimed device, but not always, nevertheless infringes.  *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 622-23 (Fed. Cir. 1995)

HANDAL & ASSOCIATES
1200 THIRD AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL: 619.544.6400
FAX: 619.696.0323

Apple's arguments with respect to these claims mirror the arguments they made with respect to claims 1 and 4 of the '737 patent discussed above, including its erroneous assertions that the accused devices are not hand held recording devices and do not have a multifunctional switch means and separate record switch assembly.  (Motion at 20:3-9.)  e.Digital incorporates by reference its arguments from the previous section as though set forth fully herein.

Apple also echoes its argument made with respect to the '774 patent in asserting that "a user does not manually insert flash memory into an Apple computer in the way that a person would insert a flash memory card into another electronic device, such as a camera or a recorder."  (Motion at 19:22-24; *see also* p. 20:10-18.)  Apple, by this statement, apparently concedes that a user can manually insert flash memory into an Apple MacBook product, but simply argues that it is done differently in the Accused Products.  However, the claims of the '737 patent, like the '774 patent, do not claim a particular "way" of coupling the flash memory module to the receiving socket.  They merely require that the components can be electrically coupled by the user, which Apple concedes can be done and which the PICs show can be done.  (*See* '737 patent PICs, Apple Exhibit 9 (Dkt# 35-11) at p. 11, 12.).

### D.    The Accused Products Infringe the '170 Patent

Independent claims 1 and 7 of the '170 patent disclose a system and method of editing messages on a handheld recording device.   Apple argues that, as with independent claims 1 and 4 of the '737 patent discussed above, its MacBook Air and MacBook Pro accused products cannot infringe these two claims because they are not "hand held recorders."  (Motion at 21:10-16.)  Apple's conclusory assertion is wrong.  e.Digital addresses this issue *infra* and incorporates the same as though set forth fully herein.

Without citing to any evidence, Apple further argues that the accused iPod Touch, iPads and iPhones do not satisfy the "means for selecting an edit point

HANDAL & ASSOCIATES
1200 THIRD  AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-21-

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*                              CASE NO. 3:13-CV-00785-DMS-WVG

within a message" as disclosed in claim 1 of the '170 patent.  As an initial matter, consideration of this issue requires resort to matters outside of the pleadings.  For this reason alone, Apple's motion should be denied.

Furthermore, Apple improperly seeks a narrow construction of the subject means-plus-function term, asking the Court to narrowly construe the structure as a "rocker pad … pivotally mounted upon a pivot support [that] allows the rocker-pad 33 to tilt about said pivot support, being responsive to manual manipulation of said rocker-pad 33." (Motion at 21:18-23.)  As noted above, Apple's attempts at early claim construction are premature.  On a motion for judgment on the pleadings, the claims must be afforded the broadest possible construction.  *R+L Carriers*, *supra*, 681 F.3d 1323 at fn. 13.

More importantly, Apple's proposed construction is wrong.  The structure defined in the specifications is, at least, the broader "switch terminal."  (*See, e.g.,* '170 patent at 4:62-5:10 and Fig. 1B.)  The rocker pad is primarily a cosmetic feature that has no inherent function by itself other than to keep its associated switches from being simultaneously depressed.[6]  Instead, it is the switch terminal that carries out the described function.  (*See id.* at 5:5-10.)  The cosmetic structure that a manufacturer may choose to install over that switch terminal is simply a design choice and is not the necessary structure that carries out the function of "selecting an edit point within a message."  In fact, one could actually remove the rocker pad and still activate the switches to get the desired results.

---

[6] This cosmetic feature is only specifically called out in dependent claim 5. Therefore, independent claim 1, from which claim 5 depends, must necessarily embrace a broader construction.  If independent claim 1 were limited to only a rocker pad, the limitation of dependent claim 5 would be unnecessary.  *See Philips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim"); *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1348 (Fed. Cir. 2012).

HANDAL & ASSOCIATES
1200 THIRD AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-22-

OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS                    CASE NO. 3:13-CV-00785-DMS-WVG

1   As this case proceeds, e.Digital will show that, under either construction, the

2   accused iPhone, iPad and iPod Touch touchscreens are at least the equivalent of a

3   switch terminal or rocker pad as they are substantially the same and/or "perform[]

4   substantially the same function in substantially the same way with substantially the

5   same result as each claim limitation of the patented product."[7]  *See TIP Sys., LLC*

6   *v. Phillips* & *Brooks/Gladwin, Inc.*, *supra*, 529 F.3d at 1376-77.  To the extent

7   Apple disputes e.Digital's doctrine of equivalents position, this is a matter for

8   litigation on the merits, not sufficiency of the pleadings.

9   **E.    E.DIGITAL'S INDIRECT INFRINGEMENT CONTENTIONS**

10  **ARE SUFFICIENT**

11  Patent Local Rule ("Patent L.R.") 3.1.d provides, in pertinent part, that a

12  plaintiff must disclose the following:

13   For each claim which is alleged to have been indirectly infringed, an
     identification of any direct infringement and a description of the acts
14   of the alleged indirect infringer that contribute to or are inducing that
     direct infringement.
15

16  Consistent with the Patent L.R. 3.1.d, the Court ordered as follows:

17   "If Plaintiff asserts indirect infringement (contributory or inducement)
     by a Defendant, Plaintiff shall provide as part of the initial
18   infringement contentions an example of how the Defendant indirectly
     infringes, including the identity of the direct infringer and factual
19   basis for the Defendant's intent."

20

21  (CMO at p. 4:6-9.)  The CMO contains no additional requirements not already in

22  Patent L.R. 3.1.d.

23  e.Digital has complied with both the Local Rules and the CMO.  In its PICs

24  served on Apple, e.Digital identified the direct infringers and alleged that Apple

25  has had knowledge of its infringement of the asserted patents since at least the

26  filing of the Complaint in this action and, since that time, has taken affirmative

27

28  [7] *See* Apple Exhibit 2, PICs, at pp. 6:19-7:1.

*HANDAL & ASSOCIATES*
1200 THIRD  AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*    CASE NO. 3:13-CV-00785-DMS-WVG

steps to cause its customers to infringe the asserted patents.  (e.Digital PICs, Apple Exhibit 2, at pp. 4:5-6:6.)  Those affirmative steps taken after obtaining knowledge of its infringement establish Apple's specific intent and include: "advising others to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; and distributing instructions (such as those cited in the attached charts) that guide users to use the Accused Products in an infringing manner." (*Id.* at 5:26-6:6; *see also id.* at 6:11-18.)

Apple argues that e.Digital has failed to identify the factual basis for Apple's intent to induce infringement.  (Motion at pp. 22:14-23:14.)  Astonishingly, in arguing that e.Digital failed to comply with the CMO with regard to its inducement contentions, Apple completely ignores the above-quoted portions of e.Digital's PICs, instead focusing only on e.Digital's averment of knowledge in the first paragraph of the PICs' discussion.  (Motion at pp. 22:22-23:14.)  The full context of e.Digital's PICs, however, reveal that e.Digital is relying not just on Apple's knowledge of infringement, but also the specific acts taken by Apple after obtaining such knowledge, to establish Apple's intent.  (e.Digital PICs, Apple Exhibit 2, at pp. 5:26-6:6.)  Thus, e.Digital has provided at least a threshold basis for inducement.  *See DSU Med. Corp*, *supra*, 471 F.3d at 1304 (specific intent requires a "showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements")

Apple further argues that e.Digital's PICs fail to assert that Apple's accused products have no "substantial non-infringing uses."  (Motion at 23:15-24:4.)  However, neither Patent L.R. 3.1.d nor the CMO require e.Digital to assert the lack of substantial non-infringing uses in the preliminary infringement contentions.  They only require a description of the defendants' "acts," including "an example of how the Defendant indirectly infringes, including the identity of the direct infringer

HANDAL & ASSOCIATES
1200 THIRD  AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*          CASE NO. 3:13-CV-00785-DMS-WVG

1    and factual basis for the Defendant's intent."  (Patent L.R. 3.1.d; CMO at p. 4:6-9.)

2         Finally, Apple asserts that e.Digital "does not claim that any third party

3    infringes any of the asserted claims with any of the accused Apple products."

4    (Motion at p. 24: 5-9.)  This claim is patently false as e.Digital's PICs repeatedly

5    identify Apple's customers and end users as direct infringers of each of the

6    asserted patents.  (*See* e.Digital's PICs, Apple Exhibit 2, at pp. 4:16-19; 4:23-24;

7    4:26-5:1; 5:4-6; 5:9-11; 5:15-17; 5:19-21.)  To the extent Apple is suggesting that

8    e.Digital must provide the specific identity of those third-party infringers, this is

9    not required.  *See DCG Systems v. Checkpoint Technologies, LLC*, *supra*, 2012

10   WL 1309161, *2 and fn. 17, *citing Metabolite Labs, Inc. v. Lab Corp.,* 370 F.3d

11   1354, 1364–65 (Fed. Cir. 2005) and *Moleculon Research Corp. v. CBS, Inc.,* 793

12   F.2d 1261, 1272 (Fed. Cir. 1986); *see also Vigilos LLC v. Sling Media Inc., et al.*,

13   Case No. 4:11-cv-04117-SBA (N.D.Cal.), Dkt# 121 (7/12/12 Order Granting

14   Defendants' Motion to Strike With Leave To Amend) at p. 9:4-24;*Rackable*

15   *Systems, Inc. v. Super Micro Computer, Inc*.  2007 WL 1223807, *5+,at *10

16   (N.D.Cal 2007) (holding that where a plaintiff identifies a category of infringers,

17   such as customers, courts generally do not require that the customers be

18   specifically identified).

19   **IV.    CONCLUSION**

20        Based on the foregoing, e.Digital respectfully requests that Apple's Motion

21   be denied in its entirety.  To the extent the Court is inclined to grant any portion of

22   the Motion, e.Digital requests leave to amend its Complaint and/or its preliminary

23   infringement contentions to cure any defect the Court may find.

24                                Respectfully submitted.

25   July 26, 2013              **HANDAL & ASSOCIATES**

26                        By:   /s/ Gabriel G. Hedrick
                                Gabriel G. Hedrick
27                              Attorneys for Plaintiff
28                              e.Digital Corporation

**HANDAL & ASSOCIATES**
1200 THIRD  AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-25-

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*                    CASE NO. 3:13-CV-00785-DMS-WVG

1

## CERTIFICATE OF SERVICE

2       The undersigned hereby certifies that a true and correct copy of the

3 foregoing document has been served on this date to all counsel of record, if any to

4 date, by electronic mail.

5       I declare under penalty of perjury of the laws of the United States that the

6 foregoing is true and correct.  Executed this 26th day of July, 2013 at San Diego,

7 California.

8

9                 /s/ Gabriel G. Hedrick

                    Gabriel G. Hedrick

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HANDAL & ASSOCIATES**
1200 THIRD  AVE
SUITE 1321
SAN DIEGO, CA 92101
TEL:  619.544.6400
FAX:  619.696.0323

-26-

*OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS*    CASE NO. 3:13-CV-00785-DMS-WVG