# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: E.DIGITAL CASES | Case nos.<br><br>12cv2698-DMS (WVG)<br>12cv2701-DMS (WVG)<br>12cv2825-DMS (WVG)<br>12cv2877-DMS (WVG)<br>12cv2891-DMS (WVG)<br>12cv2899-DMS (WVG)<br>12cv2997-DMS (WVG)<br>13cv0023-DMS (WVG)<br>13cv0112-DMS (WVG)<br>13cv0356-DMS (WVG)<br>13cv0780-DMS (WVG)<br>13cv0781-DMS (WVG)<br>13cv0782-DMS (WVG)<br>13cv0783-DMS (WVG)<br>13cv0785-DMS (WVG)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO APPLY COLLATERAL ESTOPPEL** |

In the above-captioned patent infringement actions, Defendants filed a motion to apply collateral estoppel regarding a claim construction ruling against Plaintiff e.Digital Corporation ("e.Digital") in a prior case. Plaintiff filed an opposition and Defendants replied. On July 26, 2013, the matter came on for hearing. Anton Handal argued on behalf of Plaintiff and Kevin O'Shea argued on behalf of Defendants. For the reasons which follow, Defendants' motion is granted.

In February 2010, e.Digital filed a patent infringement action in the United States District Court for the District of Colorado against 28 defendants, including Pentax of America, Inc. (*e.Digital Corp. v. Pentax of Am.*, Case No. 09-cv-2578-MSK-MJW) ("*Pentax*") for infringing three patents, including a patent at issue in the present actions, to wit, U.S. Patent No. 5,491,774 ('774 patent). On June 28, 2011, the *Pentax* court issued a claim construction order regarding the '774 patent, construing the phrase "flash memory module which operates as sole memory of the received processed sound electrical signals" in claims 1 and 19 of the patent. (Defs' Ex. 5 (Opinion and Order Regarding Claim Construction).) e.Digital then settled and voluntarily dismissed the case against all defendants pursuant to a series of orders granting joint motions for dismissal with prejudice.

The same claim limitation is at issue in the cases pending in this Court. Defendants argue e.Digital is collaterally estopped from arguing for any other construction of the claim at issue. In addition, defendants argue the claim construction adopted by the court in *Pentax* applies to U.S. Patent No. 5,839,108 ('108 patent), even though that patent was not at issue in *Pentax*.

The term "issue preclusion" encompasses the doctrine once known as "collateral estoppel." *Taylor v. Sturgell*, 553 U.S. 880, 892 n.5 (2008). "Issue preclusion ... bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment ... ." *Id*. at 893 (internal quotation marks and citations omitted).

Issue preclusion, of course, is not unique to patent cases. *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013). Accordingly, the Federal Circuit is "guided by the precedent of the regional circuit. However, for any aspects that may have special or unique application to patent cases, Federal Circuit precedent is applicable." *Id*.

In the Ninth Circuit, issue preclusion applies when

> (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom issue preclusion is asserted was a party or in privity with a party at the first proceeding.

*Paulo v. Holder*, 669 F.3d 911, 917 (9th Cir. 2011) (internal quotation marks, citation and brackets omitted). It is undisputed the third element of issue preclusion is met here as the party against whom

preclusive effect is sought, e.Digital, was a party in *Pentax*. However, the first and second elements of issue preclusion are disputed, and they are addressed in turn.

e.Digital argues issue preclusion does not apply because the claim construction issues adjudicated in *Pentax* are not identical to those presented here. After the claim construction order issued in *Pentax*, the '774 patent was subject to an *ex parte* reexamination before the United States Patent and Trademark Office ("USPTO"), in which claims 1 and 19 construed in *Pentax* were canceled as anticipated by prior art and new claims 33 and 34 were issued in their place.[1] (*See* Defs' Ex. 7 (Final Action in *Ex Parte* Reexamination) & Pl.'s Exs. 6 (Notice of Intent to Issue *Ex Parte* Reexamination Certificate) & 3 (*Ex Parte* Reexamination Certificate).)

An intervening reexamination does not terminate the preclusive effect of a prior judgment when the amended or added claims are not material to the issues presented in the subsequent lawsuit. *See Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1340-41 (Fed. Cir. 2012) (preclusion applies because the claims at issue were "merely new versions of claims that were part of the ... patent prior to its reexamination"). Federal Circuit law applies when determining whether a reexamination materially changed claims at issue in subsequent litigation. *See id.* at 1341 n.1.

e.Digital contends it should not be precluded from advocating a different construction of the term construed in *Pentax* because this Court should consider the reexamination history which was not available to the *Pentax* court and is material to construing the claim limitation at issue. e.Digital argues the reexamination history is material because it is replete with references to the presence of RAM,[2] and is therefore inconsistent with the claim construction in *Pentax*. The Court disagrees.

The claimed invention is "[a] record/playback device for use with a removable, interchangeable, flash memory recording medium which enables extended recording comparable with tape cassette dictating equipment" comprised of several elements listed in claims 1 and 19, one of which is a flash

---

[1] e.Digital alleges that various Defendants infringe claims 33 and 34 of the '774 patent. However, on June 26, 2013, e.Digital served its disclosure of asserted claims and preliminary infringement contentions pursuant to Patent Local Rule 3.1 and the May 30, 2013 Order After Case Management Conference, which directed e.Digital to limit its asserted claims to no more than five per patent. e.Digital included claim 33 for the '774 patent, but not claim 34. (Opp'n at 12 n.1.) Accordingly, only claim 33 is at issue at this time. e.Digital concedes, however, that the "differences between canceled claim 19 and new claim 34 are identical to the differences between claims 1 and 33." (*Id.*)

[2] RAM is an acronym for random access memory.

- 3 -

memory module. (*See* Defs' Ex. 1, '774 patent, claim 1 at 10:55-58 & 11:7-12; claim 19 at 12:31-34 & 12:54-57.)[3] The court in *Pentax* was asked to construe the phrase "a flash memory module which operates as sole memory of the received processed sound electrical signals" (referred to as the "sole memory limitation"). (Defs' Ex. 5 at 15-16.) The parties disagreed whether "sole memory of the received processed sound electrical signals" referred to the use of flash memory as the sole means of storing data resulting from completion of the various processing stages performed by the device, as contended by e.Digital, or to the sole writable memory in the device, so that no RAM could be used at any point in the device's operation, as contended by the defendants. (*Id.* at 6-7.) The Court construed the phrase in defendants' favor, as follows:

> The phrase "received processed sound electrical signals" refers to the electrical signals that have been generated by the microphone and passed through the amplifier and gain control circuits, but have yet to be converted by the CODEC.[4] The remainder of the disputed language requires that the device use only flash memory, not RAM or any other memory system, while engaging the CODEC, DSP[5] (as applicable), and memory control functions, as well as storing the fully-manipulated data.

(*Id.* at 16 (footnotes added).)

In contrast to the sole memory limitation addressed in *Pentax*, the reexamination before the USPTO addressed the limitation, "power source coupled to the control circuitry for supplying electrical power to the device." The proceedings did not involve any discussion of memory, as is evident from the reexamination documents submitted by the parties. (*See* Pl.'s Exs. 4 (*Ex Parte* Reexamination Interview Summary) & 5 (excepts from the Response in *Ex Parte* Reexamination); Defs' Exs. 11 (Decl. of Mark Gurries dated Dec. 20. 2011) & 7 (Final Office Action in *Ex Parte* Reexamination); Pl.'s Exs. 6 (Notice of Intent to Issue *Ex Parte* Reexamination Certificate) & 3 (*Ex Parte* Reexamination Certificate).)

Nevertheless, e.Digital contends the reexamination history "is replete with references to the presence of RAM ... to support microprocessor operations." (Opp'n at 9.) This contention is based

---

[3] These portions of the patent remained unchanged after reexamination. (*Cf.* Pl.'s Ex. 3, '774 Patent, claim 33 at 2:58-61 & 3:10-15; claim 34 at 3:34-37 & 4:16-19.)

[4] CODEC is an analog-to-digital converter circuit. (*Id.* at 3-4.)

[5] DSP is an acronym for digital signal processor or digital support processor, and is another circuit comprising the device. (*Id.* at 4.)

solely on the depiction of RAM in the figures submitted by e.Digital to facilitate the discussion of "control circuitry" in relation to powering the device. The presence of RAM, or the requirement of flash memory as the sole memory, was not the subject of the reexamination, was not discussed with the examiner, and was not addressed by the reexamination certificate.

e.Digital argues that the USPTO examiner, who was aware of the *Pentax* litigation, relied in part on incorporation of a microprocessor in allowing new independent claims 33 and 34 in lieu of old claims 1 and 19.[6] According to e.Digial, a microprocessor requires RAM to support its applications. (*Id.* at 10.) e.Digital argues that the addition of the microprocessor creates an inconsistency with, and broadens, the *Pentax* claim construction through reexamination.

But the microprocessor was not a new element added in reexamination, as it had been originally included in dependent claims 15 and 16, which remained unchanged in reexamination. (Defs' Ex. 1 at 12:10-19.) After reexamination, the microprocessor was also included in new independent claims 33 and 34. (*See* Pl.'s Ex. 3 at 3:3-4, 3:27, 4:5 & 4:33.) Moreover, while the *Pentax* court considered the use of RAM to support microprocessor applications as e.Digital suggests, it expressly rejected the argument. (Defs' Ex. 5 at 13-15.) e.Digital's contention that it could broaden the *Pentax* claim construction through reexamination, is foreclosed by 35 U.S.C. Section 305 (prohibiting enlarging claim scope in reexamination) and *In re Freeman*, 30 F.3d 1459 (Fed. Cir. 1994) (reexamination cannot serve as an "end run" around district court claim construction).

For the foregoing reasons, the reexamination had no effect on the claim construction in *Pentax*. Although claims 1 and 19 were replaced by claims 33 and 34, they differ in the addition of limitations relating to the supply of electrical power to the device (*cf.* Defs' Ex. 1 at 10:54-11:16 & 12:31-61 & Pl.'s Ex. 3 at 2:58-3:32 & 3:34-4:38 (additions at 3:3-4, 3:20-33, 4:5-6 & 4:26-39)), while the sole memory limitation construed in *Pentax* remained the same (*cf.* Defs' Ex. 1 at 11:7-12, 12:54-57 & Pl.'s Ex. 3 at 3:10-15, 4:16-19). Accordingly, the issue litigated in *Pentax* is identical to the issue presented here because it calls for the construction of the same claim term in the same patent in the same context.

---

[6] *See* Defs' Ex. 8 (e.Digital's Information Disclosure Statement). Although the examiner was made aware of *Pentax*, e.Digital does not point to any part of the reexamination history discussing it.

e.Digital next contends the '108 patent was not construed in *Pentax*, therefore the issues adjudicated in *Pentax* are not identical to those presented here.  e.Digital does not dispute that independent claims 2 and 5 of the '108 patent contain the same sole memory limitation construed in *Pentax* and that the '108 patent is closely related to the '774 patent.

It is true that "separate patents describe 'separate and distinct [inventions],' ... and it can not be presumed that related patents rise and fall together." *Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1539 (Fed. Cir. 1995) (brackets in original), quoting 35 U.S.C. § 121 & 37 C.F.R. § 1.141. However, "the same term or phrase should be interpreted consistently where it appears in claims of common ancestry." *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1031 (Fed. Cir. 2002).  Although the '108 patent does not originate in the same patent application as the '774 patent, it is undisputed the patents are closely related.

Like the '774 patent, the '108 patent claims "[a] record/playback device for use with a removable, interchangeable, flash memory recording medium which enables extended voice recording comparable with tape cassette dictating equipment." (Defs' Ex. 3 at 11:37-40.)  The two patents share the same inventor, Norbert P. Daberko.  According to the prosecution history, the invention claimed by the '108 patent "provides an improvement over the system of [the '774 patent], which improvement appears to be limited to the incorporation of a second microphone element utilized to cancel noise received at the first microphone element ... to provide better sound quality." (Defs' Ex. 4 at 3 (Notice of Allowability).)  At oral argument e.Digital admitted that "the '108 [patent] embraces the prosecution file history and the devices of [the] '774 [patent]." (Reporter's Transcript at 24.)  Indeed, the '108 patent incorporates by reference the materials disclosed in the '774 patent (Defs' Ex. 3 at 1:3 & 2:45), references the '774 patent throughout (*see, e.g.,* at 7:22-23), and includes a detailed description of the '774 patent by including word-for-word almost its entire specification (*id*. at 4:52-6:55; *cf.* Defs' Ex. 1 at 3:53-6:53) to better understand "the improvements provided by the present invention," including improvement in the microphone input with the addition of a noise cancelling microphone (*id*. at 5:55; 7:1 *et seq*.).  With the exception of incorporating a second microphone and specifying that the device is for voice instead of music recording, claim 2 of the '108 patent and claim 1 of the '774 patent are identical, including the same sole memory limitation.  Claim 5 of the '108 patent and claim 19 of the

1 '774 patent differ, in that claim 5 specifies it is for music recording and playback comparable with compact disc quality equipment and explains how this is accomplished by using two microphones and two channels. (*Cf.* Defs' Ex. 3 at 11:37-12:7 (claim 2) & 12:19-55 (claim 5) with Defs' Ex. 1 at 10:54-11:16 (claim 1) & 12:31-61 (claim 19). The differences, however, have no bearing on the sole memory limitation.

e.Digital points to Figures 3 and 4 of the '108 patent which reference SRAM[7] to suggest that the sole memory limitation should be construed differently from the construction rendered in *Pentax*. It also contends that this Court should consider the '108 patent prosecution history in construing the term anew. Notwithstanding the figures and the detailed comparison in the specification between the '774 patent and the '108 patent, the specification, including the discussion of the figures, does not mention SRAM. To the contrary, the discussion of prior art touts the benefits of using flash drive over RAM. (*See, e.g.*, Defs' Ex. 3 at 1:26 -2:41.)

Accordingly, the *Pentax* court's detailed review of prior art and analysis of the specification of the '774 patent, both of which are incorporated in the '108 patent, is equally applicable to the '108 patent. (*See* Defs' Ex. 5 at 9-12.) Although e.Digial suggests the '108 patent prosecution history may contradict the *Pentax* construction of the sole memory limitation, it offers nothing to negate the examiner's observation in the Notice of Allowability that the only apparent improvement offered by the '108 patent over the '774 patent is the addition of noise cancellation to improve sound quality. e.Digital's argument that the claim construction issue decided in *Pentax* is not identical to the issue presented here is therefore rejected.

e.Digital further argues that issue preclusion does not apply because the *Pentax* litigation did not end with a final judgment on the merits. It is undisputed *Pentax* proceeded through claim construction discovery, including expert discovery, claim construction briefing, and a full-day claim construction hearing, including testimony by the lead inventor and expert witnesses, and attorney argument. At the hearing e.Digital argued the sole memory limitation was the "core issue" in the case. (Defs' Ex. 5 at 2-3.) e.Digital also did not object to the defendants' statement that there would be no need to construe the remaining disputed terms, if the sole memory limitation was construed in the defendants' favor. (*Id.*)

---

[7] SRAM is an acronym for Static Random Access Memory.

Accordingly, the parties understood the importance of the sole memory limitation and were motivated to litigate it to the fullest. Based on the parties' representations, the court considered the sole memory limitation to be "case dispositive." (*Id*. at 16.) It issued a thoroughly-reasoned 16-page opinion rejecting e.Digital's proposed construction, and ordered the parties to file a joint statement identifying any remaining issues to be decided in the case. (*Id*.) In the joint statement, e.Digital agreed to stipulate to non-infringement as to certain defendants in light of the claim construction, and requested discovery to decide whether to stipulate with the remaining defendants as well. (Defs' Ex. 10.) Subsequently e.Digital settled with each remaining defendant and dismissed the case with prejudice pursuant to joint motions and orders of dismissal. (*See Pentax* docket nos. 399-423.) The claim construction order was not vacated.

Issue preclusion was applied in *Hartley v. Mentor Corp.*, 869 F.2d 1469 (Fed. Cir. 1989), under similar circumstances. There, the court applied Ninth Circuit law and accorded preclusive effect to a summary judgment ruling of patent invalidity where the plaintiff settled after the unfavorable ruling and entered into a stipulated judgment dismissing the action with prejudice. As here, the issue on which preclusion was sought *in Hartley* had been litigated in the prior action, a ruling unfavorable to the plaintiff was issued, and the plaintiff then settled the action and dismissed it with prejudice without vacating the invalidity ruling. Thereafter, issue preclusion was asserted against Hartley in subsequent litigation by a defendant not a party to the prior action. *Id*. at 1471. Where, as here, a stipulated dismissal is consistent with a prior ruling and the ruling is not vacated, the settlement and dismissal do not nullify the issue preclusive effect of the ruling so long as the parties had a full and fair opportunity to litigate the issues resolved therein. *Id*. at 1472-73. Like here, the plaintiff in *Hartley* did not enter into a consent decree, but settled and dismissed the claim with prejudice.[8] *Id*. at 1473. Such dismissal "operates as an adverse adjudication on the merits of a claim." *Id*.; *see also The Rio Grande, El Paso and Santa Fe R.R. Co. v. Dep't. of Energy*, 234 F.3d 1, 7 (Fed. Cir. 2000), citing *Hartley*, 869 F.2d at

---

[8] When a dismissal is consistent with a fully-litigated ruling, the Court sees no principled difference for purposes of issue preclusion between a stipulated judgment dismissing the action with prejudice and an order dismissing the action with prejudice based on the parties' joint motion after settlement. *See Hallco Mfg. Co., Inc. v. Foster*, 256 F.3d 1290, 1297 (Fed. Cir. 2001) ("there is no legally dispositive difference for claim preclusion purposes between a consent judgment based on a settlement []which ... included a provision dismissing the case,[] and a dismissal with prejudice which is based on a settlement").

- 8 -

1473 (a Rule 41(a) dismissal with prejudice pursuant to a negotiated settlement is an adverse adjudication on the merits). Based on the foregoing, the Court rejects e.Digital's argument that the *Pentax* claim construction order is not sufficiently final.

Next, e.Digital argues that a claim construction ruling made by a district court in another Circuit is not binding on courts in the Ninth Circuit. The only appellate authority cited in support of this proposition is *IGT v. Bally Gaming Intern., Inc.*, 659 F.3d 1109, 1117 n.1 (Fed. Cir. 2011). *Bally Gaming*, however, did not address this issue, but simply noted that another district court's construction of the same word in an unrelated patent was only persuasive authority for purposes of claim construction. Issue preclusion was not raised in *Bally Gaming*. Accordingly, *Bally Gaming* is factually and legally distinguishable. Moreover, e.Digital's argument is contradicted by other authority. *See, e.g., Dana III v. E.S. Originals, Inc.*, 342 F.3d 1320 (Fed. Cir. 2003) (a partial summary judgment order of infringement entered in the Central District of California was given preclusive effect in the infringement action filed in the Southern District of Florida).

Finally, e.Digital contends issue preclusion should not apply in this case for reasons of policy and fairness. "The doctrine of issue preclusion is premised on principles of fairness." *Freeman*, 30 F.3d at 1467, citing *Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 349 (1971). "Thus, a court is not without some discretion to decide whether a particular case is appropriate for application of the doctrine." *Freeman*, 30 F.3d at 1467. e.Digital contends that the Court should postpone ruling on this motion until after the parties have had an opportunity to conduct claim construction discovery and present expert testimony regarding the effect of reexamination on the '774 patent. The Court declines to do so.

The policies underlying issue preclusion favor granting defendants' motion before significant resources are expended addressing previously litigated issues. The Court is mindful that it must ensure that application of issue preclusion will not deprive a party of its "day in court," *see Taylor*, 553 U.S. at 893, and that the party against whom issue preclusion is asserted has had a full and fair opportunity to litigate the issue in the prior action. *Blonder-Tongue*, 402 U.S. at 329. e.Digital has had a full and fair opportunity to litigate the sole memory limitation in *Pentax*. The litigation included discovery, briefing, and a full-blown hearing with witness testimony and attorney argument, followed by a well-

reasoned written decision from the court. e.Digital had every reason to (and did) present its best case, as both parties understood the case-dispositive nature of the claim construction at issue.

"By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, [issue preclusion] protect[s] against the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor*, 553 U.S. at 892 (internal quotation marks and citations omitted, bracketed language added). The expense and vexation attendant to multiple lawsuits are exacerbated in patent litigation, which exacts a higher price on the parties than other types of litigation. *See Blonder-Tongue*, 402 U.S. at 334, 338-43. "In each successive suit the patentee enjoys the statutory presumption of validity, and so [may] easily put the alleged infringer to his expensive proof." *Id*. at 338. It is well known that patent litigation consumes disproportionately greater judicial resources than other types of litigation. *Id*. at 336-37; *see also* Fed. Jud. Ctr., Patent Case Management Judicial Guide, Appx. 2.2 (2009). Furthermore, "[p]ermitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects [an] aura of the gaming table," *Blonder-Tongue*, 402 U.S. at 329, and erodes reliance on judicial action. "Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants ... ." *U.S. Bancorp Mtg. Co. v. Bonner Mall P'tnship*, 513 U.S. 18, 26 (1994). Thus, such precedents should not be undermined by settlement and voluntary dismissal after an unfavorable ruling only to try again later against a different defendant. *See id*. at 26-27. Minimizing the possibility of inconsistent decisions is particularly important in patent cases. That claim construction is deemed to be an issue of law for the court stems from the desire to decrease uncertainty and increase "uniformity in the treatment of a given patent." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996). Such uniformity is fostered by application of issue preclusion in the area of claim construction. *See id.* at 391.

For these reasons, the Court finds the elements of issue preclusion are met and preclude e.Digital from relitigating construction of the sole memory limitation in claims 33 and 34 of the '774 patent and

/ / / / /

claims 2 and 5 of the '108 patent. Fairness and public policy favor application of issue preclusion here. Accordingly, defendants' motion is granted.

**IT IS SO ORDERED.**

DATED: August 21, 2013

HON. DANA M. SABRAW
United States District Judge